## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REP. ERIC SWALWELL, | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:21-cv-00586-AHM |
| DONALD J. TRUMP, DONALD J. TRUMP, JR., REP. MO BROOKS, and RUDOLPH GIULIANI, | |
| *Defendants,* | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

### I.      PRELIMINARY STATEMENT

Plaintiff, Congressman Eric Swalwell ("***Rep. Swalwell***" or "***Plaintiff***") has sued Defendant Rudolph Giuliani ("***Defendant***" or "***Giuliani***") as well as former president Donald J. Trump ("***President Trump***"), Donald J. Trump, Jr. ("***Trump Jr.***"), and Congressman Mo Brooks ("***Rep. Brooks***" and, collectively, "***Defendants***") on multiple causes of action (nine counts), which are based primarily on remarks Defendants made at a rally at the Ellipse Grounds on January 6, 2021 ("***Ellipse Rally***").  *See generally* Plaintiffs' Original Complaint [Doc. 1] ("***Compl.***"); *id.* at ¶ 159. Rep. Swalwell accuses Giuliani and the other Defendants of conspiring to cause the riot at the Capitol that occurred on January 6, 2021 ("***Capitol Riot***"), which allegedly caused him damages. *See generally id.*

As will be discussed below, Plaintiff's claims are entirely implausible, inadequately pleaded, and, in any event, are barred by the First Amendment.  As a result, Plaintiff has failed to state any claim upon which relief can be granted as against Giuliani, the Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

1

II.   **PERTINENT FACTS**

The following are the pertinent facts as alleged in the Complaint, referred to in the Complaint, or which the Court can take judicial notice of:[1]

A.  **Factual Overview**.

Plaintiff accuses Giuliani of "conspiring" with the other Defendants to file "frivolous" lawsuits challenging the 2020 Presidential Election (the "***Election***") as well as trying to "intimidate" state officials.  Compl. at ¶¶ 2, 18.  He further alleges that Giuliani, along with the other Defendants, "called" their supporters to Washington, D.C. (the "***District***") to "stop the steal [of the Election]" and to "be wild" on January 6, 2021, the day of the congressional certification of the Election ("***Electoral Certification***").  *Id.* at ¶ 2.  Plaintiff claims that "thousands" came to the District in response to this "call" with many planning violence at the Capitol in advance and some being "stirred" to violence on January 6, 2021 by Defendants' words.  *Id.* at ¶ 2.  Plaintiff alleges that these "words" were the cause, in fact, of the Capitol Riot and that, as a result, Plaintiff suffered terror and injury as a result of the Riot.  *Id.* at ¶¶ 5-6.  Plaintiff further alleges that the Defendants watched Plaintiff's and others' terror at the Capitol on television and that President Trump was "enthusiastic" regarding the violence, wondering why others on the "team" were not as excited. *Id.* at ¶ 7.

---

[1] In deciding a motion under Rule 12(b)(6), a court may take judicial notice of public records from other proceedings.  *See, e.g., Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of other proceedings).  A court may also take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty.  *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.5 (D.D.C. 2010)  (internal citation omitted).  A court may also consider matters referenced in the plaintiff's complaint.  *See Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).

**B.  The Lead-Up To The Ellipse Rally And Giuliani's Speech At The Rally**.

The first announcement of any protests regarding the Election in the District appears to have been a tweet from President Trump on December 19, 2021.  Compl. at ¶ 86.  This was approximately 18 days prior the Capitol Riot.  However, according to Plaintiff's own Complaint, the Capitol Riot was supposedly planned "months" in advance – long before the December 19, 2021 tweet announcing the Ellipse Rally.  *See* Compl. at ¶ 92 n.16.  And although Plaintiff claims that Defendants called their supporters to the District for the purpose of violently stopping the Electoral Certification at the Capitol, there is no evidence that, prior to President Trump's remarks during the Ellipse Rally,[2] that there was ever any discussion of any activities at the Capitol on January 6, 2021.  *See generally* Compl. at ¶¶ 56-128 (cataloguing supposed incendiary statements by Defendants prior to Capitol Riot).  Instead, the Rally was held at the Ellipse Grounds near the White House.  Compl. at ¶ 159.  Under normal circumstances, the Ellipse Grounds—about 1.6 miles away—is an approximate 35-minute walk from the Capitol.[3]  And given the tens of thousands of people in the District that day, it would have almost certainly taken an inordinate amount of time for attendees of the Ellipse Rally to make it to the Capitol grounds.

Giuliani gave his brief remarks at the Ellipse Rally before President Trump and Trump Jr. Compl. at ¶ 115.  In Giuliani's remarks, which were only a few minutes,[4] he told the crowd that:

*Hello. Hello everyone. We're here just very briefly to make a very important two points.  Number one; every single thing that has been outlined as the plan for today*

---

[2]  *See* https://www.rev.com/blog/transcripts/donald-trump-speech-save-america-rally-transcript-january-6 (last visited May 17, 2021) ("***Trump Speech***") at 01:12:43-01:13:09 and 018:16-19:03 (admonishing crowd at the Ellipse Rally to "walk down Pennsylvania Avenue" to the Capitol and to "peacefully and patriotically protest").

[3] *See, e.g.,* https://www.rome2rio.com/s/White-House/United-States-Capitol (last visited May 17, 2021).

[4]  *See* https://www.rev.com/blog/transcripts/rudy-giuliani-speech-transcript-at-trumps-washington-d-c-rally-wants-trial-by-combat (last visited May 17, 2021) ("***Giuliani's Speech***").

3

*is perfectly legal.  I have Professor Eastman here with me to say a few words about that.  He's one of the preeminent constitutional scholars in the United States.  It is perfectly appropriate given the questionable constitutionality of the Election Counting Act of 1887 that the Vice President can cast it aside and he can do what a president called Jefferson did when he was Vice President.  He can decide on the validity of these crooked ballots, or he can send it back to the legislators, give them five to 10 days to finally finish the work.  We now have letters from five legislators begging us to do that.  They're asking us.  Georgia, Pennsylvania, Arizona, Wisconsin, and one other coming in.*

*It seems to me, we don't want to find out three weeks from now even more proof that this election was stolen, do we?  So it is perfectly reasonable and fair to get 10 days… and you should know this, the Democrats and their allies have not allowed us to see one machine, or one paper ballot.  Now if they ran such a clean election, why wouldn't they make all the machines available immediately?  If they ran such a clean election, they'd have you come in and look at the paper ballots.  Who hides evidence?  Criminals hide evidence.  Not honest people.  Over the next 10 days, we get to see the machines that are crooked, the ballots that are fraudulent, and if we're wrong, we will be made fools of.  But if we're right, a lot of them will go to jail.  Let's have trial by combat.  I'm willing to stake my reputation, the President is willing to stake his reputation, on the fact that we're going to find criminality there.*

*Is Joe Biden willing to stake his reputation that there's no crime there?  No.  Also, last night one of the experts that has examined these crooked dominion machines has absolutely what he believes is conclusive proof that in the last 10%, 15% of the vote counted, the votes were deliberately changed.  By the same algorithm that was used in cheating President Trump and Vice President Pence.  Same algorithm, same system, same thing was done with the same machines.  You notice they were ahead until the very end, right?  Then you noticed there was a little gap, one was ahead by 3%, the other was ahead by 2%, and gone, gone, they were even.  He can take you through that and show you how they programmed that machine from the outside to accomplish that.  And they've been doing it for years to favor the Democrats.*

*It is a matter of scientific proof.  We need two days to establish that.  It would be a shame if that gets established after it's over, wouldn't it be?  This was the worst election in American history.  This election was stolen in seven states.  They picked states where they have crooked Democratic cities, where they could push everybody around.  And it has to be vindicated to save our republic.  This is bigger than Donald Trump. It's bigger than you and me.  It's about these monuments and what they stand for.*

*This has been a year in which they have invaded our freedom of speech, our freedom of religion, our freedom to move, our freedom to live.  I'll be darned if they're going to take away our free and fair vote.  And we're going to fight to the very end to make sure that doesn't happen.  Let me ask Professor Eastman to explain as easily as we*

> *can, I know this is complicated, but what happened last night, how they cheated, and how it was exactly the same as what they did on November 3rd.*
> *God bless you. And thank you so much for your support. I know the courage it takes to be out there. I know how you get ridiculed. I know how they try to take jobs away from you. But you look in the mirror every night and you say to yourself, "I'm doing the right thing for myself, for my family, for my children, and most importantly for the United States of America."*

*Id.*

Also, in the midst of Giuliani's Speech, a law professor named John Eastman gave comments regarding how he believed that former Vice President Pence could "let the legislators of the state look into this". *Id.* at 07:45-0815.

### C.  The Capitol Riot And The Aftermath.

The Ellipse Rally did not conclude until around 1:10 p.m. on January 6, 2021.[5]  President Trump closed the Ellipse Rally with a speech beginning at noon (*see id.*) and ended by encouraging the attendees to march to the Capitol, having already admonished them—eighteen minutes into his speech at approximately 12:20 p.m.— that any protest at the Capitol should be peaceful and patriotic.  *See* note 2 *supra*.  Given that—on a normal day—the walk from the Ellipse to the Capitol was a 35-minute walk, the earliest any Rally attendees could have arrived at the Capitol (assuming they immediately embarked to the Capitol upon hearing Trump mention a Capitol protest and did not wait for the end of the Trump Speech) would have been approximately 12:55 p.m.

However, public information shows that at approximately 12:28 p.m., there were reports of 10,000 to 15,000 people marching down Pennsylvania Avenue toward the Capitol.[6]  At 12:30 p.m. there were already large crowds surrounding the Capitol and at 12:53 p.m. the Capitol

---

[5]
https://en.wikipedia.org/wiki/Timeline_of_the_2021_storming_of_the_United_States_Capitol (last visited May 17, 2021) ("***Timeline***").

[6]            https://apnews.com/article/docs-expose-depth-january-6-capitol-siege-chaos-fd3204574c11e453be8fb4e3c81258c3 (last visited May 17, 2021).

perimeter was breached by rioters.  *See* Timeline, note 5 *supra*.  Public information does not report any large numbers of Ellipse Rally attendees marching from the Ellipse to the Capitol until approximately 1:30 p.m.[7]  Whenever they left the Ellipse Grounds—and however many ultimately made the trek to the Capitol—the Rally attendees would have had a thousands of people "in line" ahead of them to fight through in order breach the Capitol if that was, indeed, the intent of those who marched to the Capitol from the Ellipse Grounds.

The first rioter entered the Capitol building at 2:12 p.m.  *See* Compl. at ¶ 134; Timeline, note 5 *supra*.  At 2:38 p.m. President Trump tweeted out for his supporters to support Capitol Police and to "stay peaceful".  *Id.*  As everyone now knows, Riot resulted in death and vandalism to the Capitol.  Those responsible for the violence at the Capitol have been the subject of one of the most extensive FBI investigations in history.  Over 500 persons have been arrested in connection with the Capitol Riot.[8]  However, there is no evidence that any of the Defendants have been implicated or investigated as in any way conspiring with the rioters or encouraging the riot and Plaintiff pleads no such allegations in his Complaint.  *See generally* Compl.

### III.   SUMMARY OF ARGUMENT

Plaintiff brings causes of action against Giuliani on nine different counts:  (1) Conspiracy to Violate Civil Rights (Interference with Official Duties) 42 U.S.C. § 1985(1); (2) 42 U.S.C. § 1986; (3) Negligence *Per Se* (Incitement to Riot); (4) Negligence *Per Se* (Disorderly Conduct); (5) Bias-Related Crimes; (6) Intentional Infliction of Emotion Distress; (7) Negligent Infliction of Emotional Distress; (8) Aiding and Abetting Common Law Assault; and (9) Negligence.  *See*

---

[7]   *See*   https://www.washingtonpost.com/nation/interactive/2021/capitol-insurrection-visual-timeline/?itid=hp-top-table-main-0106 (last visited May 17, 2021).

[8]  *See*  https://news.yahoo.com/fbi-nears-500-arrests-stemming-from-pro-trump-riot-at-us-capitol-on-jan-6-221709836.html (last visited May 17, 2021).

Compl. at ¶¶ 166-261.  The Court should dismiss the Complaint in its entirety against Giuliani for at least three (3) reasons.  First, the Complaint is implausible on its face.  Second, the Complaint is inadequately pleaded.  Finally, even if the Complaint were plausibly and adequately pleaded, the First Amendment bars the claims.

### IV.   ARGUMENTS AND AUTHORITIES

#### A.  Overview Of Pertinent Legal Standards.

##### 1.   *FED. R. CIV. P. 12(b)(6) – Failure To State A Claim.*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, a Rule 12(b)(6) motion is a proper vehicle for dismissal on an affirmative defense when the facts that give rise to the defense are clear from the face of the complaint.  *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015).  Moreover, where a plaintiff is a public official—as is the case here—tort claims based on the defendant's exercise of First Amendment rights, the plaintiff must plausibly plead that the defendant acted with actual malice.  *See Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021).  The actual malice standard applies to all claims involving free speech – not just defamation claims.

*See id.* at 243 (applying to false light claims); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 267 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (applying to common law assault claim).

### 2. SPECIAL PLEADING STANDARDS FOR CLAIMS UNDER 42 U.S.C. § 1985(1).

Section 1985(1) makes it unlawful for "two or more persons ... [to] conspire to prevent, by force, intimidation, or threat, any person ... from discharging any duties [of public office]; ... or to injure him in his person or property on account of his lawful discharge of the duties of his office." 42 U.S.C. § 1985(1).  Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: "an agreement to take part in an unlawful action or a lawful action in an unlawful manner."  *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). A plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim under Section 1985.  *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997).

A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury.  *See id.* at 321.  Moreover, the plaintiff must allege these elements with particularity.  *See Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir.1993). Finally, where the plaintiff is a public official, the protections of the First Amendment apply to a Section 1985 claim.  *Barr v. Clinton*, 370 F.3d 1196, 1203–04 (D.C. Cir. 2004) ("[W]e hold that First Amendment protections apply to section 1985 claims[.]").  Accordingly, in addition to the

8

normal heightened pleading standards imposed on a Section 1985 claim, a plaintiff must also allege plausible facts sufficient to demonstrate actual malice.

## B.  Plaintiff's Claims Are Facially Implausible.

Plaintiff's claims are facially and utterly implausible.  In essence, Plaintiff's claim requires the Court to believe the following fantastical claim of conspiracy:  (1) All of the Defendants, immediately after the Election, had a meeting of the minds and reached an agreement; (2) said agreement was to file frivolous litigation and make public statements undermining public confidence in the Election; (3) for the purpose of riling Trump supporters into a frenzy, which would then permit Defendants to "call on" the supporters to come to the District for the Ellipse Rally on January 6, 2021; (4) for the ultimate purposes of inciting them to attack the Capitol and thereby interfere with Rep. Swalwell's performance of his official duty of participating in Electoral Certification.  The conspiracy defies all plausibility and believability on its face.  However, aside from the fact that this conspiracy theory is overall implausible, there are several specific aspects of the conspiracy theory that are inconsistent with both the allegations in Plaintiff's Complaint and publicly available information.

### 1.  *GIULIANI'S SPEECH CANNOT BE CONSTRUED AS AN INCITEMENT TO VIOLENCE.*

As the Court can determine for itself, there is simply no reasonable reading of the Giuliani Speech that can be construed as an incitement to violence.  A reasonable reading of Giuliani's Speech gives a reasonable reader the following impression: (1) Giuliani believes that former Vice President Pence had the power to send the Election certifications back to the state legislators; (2) that during the 5 to 10 day time frame that this occurs, Giuliani will have an opportunity to collect more evidence on the integrity of the voting machines/software; (3) he expects that evidence to show evidence of fraud; (4) he admits he will be a "fool" if the evidence does not support his

claims; and (5) he hyperbolically refers to this future evidentiary contest as a "trial by combat". *See generally* Giuliani Speech, note 4 *supra*.   No reasonable reader or listener would have perceived Giuliani's speech as an instruction to march to the Capitol, violently breach the perimeter and enter the Capitol building, and then violently terrorize Congress into not engaging in the Electoral Certification.   Nor would anyone perceive the "trial by combat" reference as a call to arms to invade the Capitol.   The statement is clearly hyperbolic and not literal and, even if it were to be perceived literally, Giuliani is clearly referring to an event in the future after evidence of alleged Election fraud is collected.   No one could reasonably perceive the "trial by combat" reference as one inciting the listeners to an immediate violent attack on the Capitol, which could have nothing to do with Giuliani's allegorical "trial by combat" over evidence of fraud in the Election.

Given that there are no literal calls for violent action by the attendees against the Capitol, Plaintiff could only argue that Giuliani's Speech incited the Ellipse Rally attendees to riot by "implication".   "[I]mplication stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).   To establish statement by implication, Plaintiff must demonstrate (1) that an "inference can reasonably be drawn" in accordance with Plaintiff's allegations and (2) that "the particular manner or language" of Giuliani's Speech supplies "additional, affirmative evidence suggesting that the [Giuliani] intends or endorses the" inference suggested by Plaintiff.   *See id.* at 520; *Nunes v. WP Co. LLC*, No. 20-CV-01403 (APM), 2020 WL 7668900, at *3–4 (D.D.C. Dec. 24, 2020).   Plaintiff's inference that Giuliani's Speech is an implied message to attack the Capitol is completely unreasonable.   Further, even if it were not, Plaintiff has not pleaded any facts—and cannot do so—that Giuliani intended

or endorsed the inference Plaintiff suggests.  To the contrary, the publicly available evidence demonstrates that Giuliani immediately condemned the Capitol Riot, calling it "shameful".[9]

Accordingly, because Plaintiff's claims that Giuliani's Speech was an incitement to violence—a claim that every one of his causes of action depends on—is entirely implausible, his Complaint must be dismissed.

### 2. NO OTHER DEFENDANT'S SPEECH CAN BE CONSTRUED AS AN INCITEMENT TO VIOLENCE.

To the extent Plaintiff may argue that even though Giuliani's Speech does not incite violence, those January 2, 2020 speeches of his alleged "co-conspirators" did so, these arguments fail for the same reasons.  Rep. Brooks' speech mentions nothing about violence or any march to the Capitol.[10]  Neither does Trump Jr.'s speech.[11]  President Trump's Speech does mention a march to the Capitol, but expressly provides that any protests should be peaceful.  *See* note 2 *supra*. Moreover, President Trump, upon learning of the Capitol Riot, admonished those present at the Capitol to remain peaceful and support the Capitol Police.  Timeline, note 5 *supra*.  Language such as being "wild", "fighting", "kicking ass" and the like cannot be construed as calls to commit immediate and specific acts of violence, especially when—in the context of the march to the Capitol—President Trump admonished peaceful protest.  Simply, put there is no "overt act" of any alleged co-conspirator Defendant that can be plausibly construed as inciting violence at the Capitol that harmed Plaintiff.  As such, the claims must be dismissed.

---

[9]  *See*   https://www.newsweek.com/giuliani-condemns-washington-violence-twitter-shameful-1559761 (last visited May 17, 2021).

[10] *See* https://www.youtube.com/watch?v=ZKHwV6sdrMk (last visited May 17, 2021).

[11]  *See*   https://www.rev.com/blog/transcripts/donald-trump-jr-2020-rnc-speech-transcript (last visited May 17, 2021).

### 3. *CONSPIRACY WITH RIOTERS IS IMPLAUSIBLE.*

The FBI is the most respected and advanced law enforcement organization in the world. As discussed above, it has launched an extensive investigation into the Capitol Riot, making over 500 arrests. The FBI and Department of Justice have revealed that the attack on the Capitol was, in substantial part, the result of coordinated efforts by extremist groups.[12] There is no evidence that any Defendant has been investigated for, let alone charged with, any crime related to the Capitol Riot or involvement with these extremist groups. Plaintiff would have the Court believe that what the FBI has been unable to do—tie Defendants to a vast conspiracy to mastermind the attack on the Capitol—Plaintiff will accomplish through this litigation. This is simply too far-fetched and outlandish to pass the plausibility standards of Rule 12(b)(6).

Moreover, Plaintiff's allegations of conspiracy are otherwise implausible. Plaintiff implausibly contends that one of President Trump's tweets to attend a "wild" January 6, 2021 rally (which ultimately materialized as the Ellipse Rally) was essentially an "open invitation" to join a conspiracy involving Defendants and any would-be violent actors to act as foot soldiers to disrupt Congress in the Electoral Certification. *See* Compl. at ¶ 177. In this way, Plaintiff hopes to make Defendants liable for the actions of the Capitol Rioters who supposedly all showed up in the District "at the call" of President Trump and Defendants. *See id.* This is an implausible conspiracy theory. Clearly, President Trump's tweet is not an offer to enter into a violent conspiracy. In addition, Defendants could clearly have no "meeting of the minds" with persons who they had never even met and who did nothing more than show up at the Ellipse to hear their speeches. Plaintiff's claim requires the Court to imply some type of "psychic connection" between

---

[12] *See* https://www.npr.org/2021/03/30/982381991/capitol-conspiracy-cases-show-plans-for-violence-not-necessarily-for-breach (last visited May 17, 2021).

Defendants and rioters wherein the parties had a meeting of the mind to engage in violence despite never engaging in communication with one another.

Because any conspiracy between Defendants and rioters is wholly implausible, Plaintiff's claims must be dismissed on this basis.

### 4.  *CAUSATION IS IMPLAUSIBLE.*

Finally, aside from all else, Plaintiff cannot plausibly plead causation.  As discussed above, thousands of demonstrators were already at the Capitol and breaching its perimeter before President Trump made any suggestion of marching to the Capitol at the Ellipse Rally.  The initial attacks on the Capitol were pre-planned and were completely independent of the Ellipse Rally as Plaintiff's own pleadings admit.  *See* Compl. at ¶ 2.  As discussed above, it would have been impossible for those supposedly "stirred" by the words of President Trump to have been responsible for the initial breach at the Capitol because by the time attendees walked from the Ellipse through the thousands of people flooding the streets to the Capitol, the violence had already begun.  Even if some of the Ellipse Rally attendees were stirred to violence from the Ellipse Rally speeches, the attack on the Capitol would have occurred regardless.  This is clearly evidenced by public records demonstrating that extremists planned the attack independent of the Ellipse Rally and with no plans to attend the Rally or hear the speeches.[13]

Therefore, Plaintiff's own pleadings and the publicly available facts demonstrate that he cannot, as a matter of law, prove that he was injured as a result of Defendants' supposed conspiracy or actions when the evidence shows that the Capitol was attacked independent of Defendants' actions.  Plaintiff therefore cannot plausibly demonstrate any actions of Defendants were the

---

[13]  *See*  https://www.npr.org/2021/03/02/972895521/prosecutors-proud-boys-gave-leader-war-powers-planned-ahead-for-capitol-riot (last visited May 17, 2021).

proximate cause of his injuries given the indisputable evidence the Capitol Riot would have occurred regardless of the Ellipse Rally.

### C.  Plaintiff Has Failed To Adequately Plead The Claims.

Even if Plaintiff's claims were plausible, they are nonetheless inadequately pleaded. Plaintiff has failed to allege actual malice as required by the First Amendment.  In addition, Plaintiff has failed to plead with the particularity required by Section 1985.

#### 1.  *FAILURE TO PLEAD ACTUAL MALICE.*

As discussed above, where a public official brings a tort claim based on speech, the First Amendment requires the plaintiff to plead and prove actual malice.  This type of pleading requires more than "labels and conclusions" and a simple reference to the relevant legal standard.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The ill-will or wrongful motivation of the defendant is not sufficient to demonstrate actual malice.  *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise— do not impact whether defendants acted with actual malice as a matter of law.").

Rather, Plaintiff must show that Giuliani made the statements complained of with knowledge that the statements were false or with reckless disregard as to whether they were true or false.  *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996).  In order to prove that a statement was made with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth" of his statements.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Here, Plaintiff complains of multiple statements made by Giuliani:  (1) public statements designed to undermine public confidence in the Election such as the Election being "rigged" and

that there was fraudulent voting; (2) making statements (and encouraging others to make statements) to local officials regarding "election rigging"; and (3) that Vice President Pence had the power to block the Electoral Certification.  Compl. at ¶¶ 173-74, 180.  These are the basis of his Section 1985 Claim.  *See id.*  Plaintiff further complains of statements made by Giuliani to the effect that the country was being "seized by an act of fraud" and was no longer a functioning republic as a basis for his negligence claims and bias crime claims.  *See id.* at ¶¶  196, 205, 215.  Further, Plaintiff accuses Giuliani of telling the public that Biden's victory was the largest act of fraud in U.S. history as the basis of the intentional and negligent infliction of emotional distress claim.  *See id.* at ¶¶ 222, 232.  All of these statements are the supposed basis for the assault claim.  Compl. at ¶ 247.

Plaintiff has made absolutely no attempt to plead any allegations—much less plausible ones—that Giuliani had subjective knowledge of the alleged falsity of the statements made regarding the claims that the Election was tainted by widespread fraud and manipulation of votes as Giuliani discussed during his Speech or that Vice President Pence had the legal power to block the Electoral Certification.  *See, e.g.,* Note 4 *supra*.  Because Plaintiff has made no allegations that Giuliani made the statements with knowledge of falsity or with reckless disregard for truth, Plaintiff has failed to adequately state claims on which relief can be granted.  Likewise, to the extent Plaintiff seeks to hold Giuliani accountable as a co-conspirator for the statements of other Defendants, he cannot do so since he has not adequately pleaded that the other co-Defendants made their statements with knowledge of falsity or with reckless disregard for truth of their statements.  Accordingly, all of the Plaintiff's claims should be dismissed.

## 2. *FAILURE TO PLEAD WITH PARTICULARITY.*

As discussed above, a Section 1985 claim must be pleaded with particularity.  Plaintiff's Section 1985 Claim is not pleaded with sufficient particularity.  Plaintiff has failed to particularly plead the following elements of his Section 1985 Claim:  (1) meeting of the minds; and (2) damages.

First, Plaintiff has not pleaded the particularization of an agreement between the alleged co-conspirators as he is required to do.  Plaintiff has pleaded no specific facts that would give rise to an inference that the Defendant all agreed and had a meeting of the minds on the far-sweeping plot that Plaintiff alleges in his Complaint – namely to engage a public disinformation campaign to create an army of rabid Trump supporters who could ultimately be incited to disrupt and block the Electoral Certification.  In his Complaint, Plaintiff does nothing other than make the conclusory assertion that the Defendants "agreed" to engage in the conspiratorial conduct complained of.  *See* Compl. at ¶¶ 168-177.  There is no allegation in the Complaint of the time, place, and manner of how the Defendants came to a meeting of the minds and reached an agreement on the course of action Plaintiff complains of.  Because Section 1985 claims are subject to a heightened pleading standard, Plaintiff was required to—but did not—plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators.  *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim subject to heightened pleading standard where, like here, plaintiff only alleged a shared conspiratorial objective).

Furthermore, Plaintiff fails to plead any damages with specificity.  Plaintiff simply states, in pure conclusory fashion, that he is "a party so injured or deprived" by the alleged Section 1985

conspiracy.  Plaintiff fails to explain the damages or any causal connection between the alleged conspiracy and his damages.  Accordingly, the Section 1985 Claim must be dismissed.[14]

### D.  Plaintiffs' Claims Are Barred By The First Amendment.

Even were Plaintiff's claims plausibly and adequately pleaded, they are nonetheless barred by the First Amendment.  Ultimately, regardless of the cause of action Plaintiff pleads, all of his claims ultimately complain of protected opinions, governmental criticisms, political expressions, and rights of association of Giuliani.  Multiple authorities weighing the limits of the First Amendment have forbade liability for speech far more incendiary than the speech complained of in this case.

In *Hess v. Indiana*, 414 U.S. 105, (1973), the Supreme Court reversed the conviction of an antiwar demonstrator.   In *Hess*, during a demonstration on the campus of Indiana University, approximately 100 to 150 of the demonstrators moved onto a public street and blocked the passage of vehicles.  *Id.* at 106.  When the demonstrators did not respond to verbal directions from the sheriff to clear the street, the sheriff and his deputies began walking up the street, and the demonstrators in their path moved to the curbs on either side, joining a large number of spectators who had gathered.  *Id.*  Hess, the relevant antiwar demonstrator, was standing off the street as the sheriff passed him.  *Id.*  Hess was arrested for disorderly conduct for saying "We'll take the fucking street later," or "We'll take the fucking street again."  *Id.* at 107.

The Indiana Supreme Court upheld Hess's conviction on the theory that—similar to Plaintiff's theory here— Hess' statement was intended to incite further lawless action on the part of the crowd in his vicinity and was likely to produce such action.  *Id.* at 108.  In reversing, the

---

[14] And, therefore, the Section 1986 claim must also be dismissed since a viable Section 1985 claim is required to maintain that claim.  *See Baines v. Masiello*, 288 F. Supp. 2d 376, 394-95 (W.D.N.Y. 2003).

Supreme Court held that, viewing Hess' speech in the light most favorable to the State of Indiana, "it amounted to nothing more than advocacy of illegal action at some indefinite future time". *Id.* The *Hess* Court rested its holding on the basis that "[u]nder our decisions, 'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'") *Id.* (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).   Clearly, Giuliani's Speech at its theoretical worst—that is, assuming one adopted the completely implausible and ridiculous interpretation that trial by combat" or "fight to the end" meant literal and physical violence—was not a call for imminent and immediate violence, but rather—like in *Hess*—advocacy for some violent conduct at some indefinite point in the future.

Likewise, in *Terminiello v. City of Chicago*, 337 U.S. 1 (1949) the Supreme Court overturned a conviction under a statute that "permitted conviction […] if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest" because a "conviction resting on any of those grounds may not stand" under the First Amendment.  *Id.* at 5.  Thus, even if it were the case that some persons were stirred to action by Giuliani's words or actions—before or during the Ellipse Rally—that caused them to attack the Capitol, this is still not sufficient to impose liability on Giuliani.  Only speech that presents a "clear and present danger" tantamount to the proverbial yelling "fire" in a crowded theater may be prohibited.  *See id.*

Simply put, regardless of how artfully Plaintiff pleads his claims, the First Amendment simply does not permit action based on Giuliani's Speech.  There is no plausible way to construe the Speech to inciting a clear and present danger of violent mob action.  The First Amendment bars all claims and causes of action based on Giuliani's Speech and his activities in criticizing the

Election results.  It would be unconstitutional to subject Giuliani to liability for the expressions Plaintiff complains of.

## V.       __CONCLUSION__

For all of the reasons discussed herein, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**