# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERIC SWALWELL, | ) |
|  | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) Civil Case No. 1:21-cv-00586 APM |
| v. | ) |
|  | ) |
| DONALD J. TRUMP, et al., | ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

## MEMORANDUM IN SUPPORT OF DONALD J. TRUMP
## AND DONALD TRUMP JR.'S MOTION TO DISMISS

Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump and
Donald Trump, Jr.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ..................................................................... iii

BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................. 8

I. THE CONSTITUTION FORECLOSES THIS COURT FROM EXERCISING
JURISDICTION OVER PRESIDENT TRUMP FOR ACTIONS TAKEN DURING HIS
PRESIDENCY ........................................................................................ 8

    a.    Absolute immunity bars the claims against
former President Trump. ................................................................. 8

    b.    The political question doctrine also bars the claims
against President Trump. ............................................................. 11

    c.    The claims against President Trump are precluded by the
Impeachment Judgment Clause, res judicata, and collateral
estoppel. ....................................................................................... 12

II. PLAINTIFF LACKS STANDING TO BRING HIS CLAIMS
AGAINST ANY DEFENDANT ............................................................... 15

    a.    Plaintiff has not alleged a particularized injury
causally connected to either Trump Defendant. ......................... 15

    b.    Members of Congress lack standing to sue
under Section 1985(1). ................................................................ 17

III. WELL ESTABLISHED FIRST AMENDMENT LAW BARS EVERY CLAIM MADE BY
REPRESENTATIVE SWALWELL, SHOWING HIS REAL ENDGAME IS TO USE THIS
LITIGATION TO SCORE POLITICAL POINTS. ..................................... 21

a.  The incitement and "true threats" standards
    protect the speech at issue in this case. ...............................................23

b.  Plaintiff's reading of the federal statutes is so
    broad and vague as to make them susceptible to
    a facial challenge. ...............................................24

c.  The Trump Defendants had a First Amendment
    right to petition the government for redress of
    grievances...............................................25

d.  Prior restraints against speech are presumptively
    unconstitutional...............................................27

IV.  Plaintiff Failed to Plausibly Plead Any of His Nine Counts. ......28

a.  Plaintiff's § 1985(1) claim is implausible and
    hopelessly flawed. ...............................................29

b.  Likewise, Plaintiff has not and cannot state
    a claim under § 1986. ...............................................31

c.  Plaintiff also insufficiently plead his D.C. law claims,
    over which the Court should decline to exercise supplemental
    jurisdiction. ...............................................32

CONCLUSION ...............................................37

CERTIFICATE OF SERVICE ...............................................38

# TABLE OF AUTHORITIES

## CASES

*Alexander v. U.S.,*

    509 U.S. 544, 549 (1993) ----------------------------------------------------------------- 27

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) -------------------------------------------------------------- 28, 29

\* *Baker v. Carr,*

    369 U.S. 186, 217 (1962) ----------------------------------------------------------------- 12

*Bancoult v. McNamara,*

    455 F.3d 427, 432 (D.C. Cir. 2006) ----------------------------------------------------- 12

*Bell Atl. Corp. v. Twombly,*

    *550 U.S. 544, 545* (2007) -------------------------------------------------------- 28, 31, 32

*Bonner v. S-FER International, Inc.,*

    207 F. Supp.3d 19, 25 (D.D.C. 2016) --------------------------------------------------- 36

*Brandon v. Lotter,*

    157 F.3d 537, 539 (8th Cir. 1998) ------------------------------------------------------ 31

\* *Brandenberg v.* Ohio,

    395 U.S. 444 (1969) ------------------------------------------------------------------------ 23

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*

    556 U.S. 635, 639–40 (2009) ------------------------------------------------------------ 32

*Clinton v. Jones,*

    520 U.S. 681, 696 (1997) ------------------------------------------------------------- 9

*Competitive Enterprise Institute v. Mann,*

    150 A.3d 1213, 1260 (D.C. 2016) ---------------------------------------------------- 36

*County of Santa Clara v. Trump,*

    250 F. Supp.3d 497, 539 (N.D. Cal. 2017) ---------------------------------------- 10

*Dalton v. U.S.,*

    71 Ct. Cl. 421, 425 (1931) ------------------------------------------------------------ 20

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*

    472 U.S. 749, 758–759 (1985) ---------------------------------------------------------- 22

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*

    472 U.S. 749, 759 (1985) -------------------------------------------------------------- 26

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*

    561 U.S. 477, 498 (2010) -------------------------------------------------------------- 19

*Gometz v. Culwell,*

    850 F.2d 461, 464 (7th Cir. 1988) ---------------------------------------------------- 28

*Gov't of Rwanda v. Johnson,*

    409 F.3d 368, 375 (D.C. Cir. 1992) -------------------------------------------------- 14

*Haynesworth v. D.H. Stevens Co.,*

    645 A.2d 1095, 1098 (D.C. 1994) ---------------------------------------------------- 33

*Hurd v. District of Columbia,*

    864 F.3d 671, 686 (D.C. Cir. 2017) -------------------------------------------------- 29

*Japan Waling Ass'n. v. Am. Cetacean Soc.,*

    478 U.S. 221, 230 (1986)------------------------------------------------------------ 11

*Jones v. Kirschner,*

    835 F.3d 74, 84 (D.C. Cir. 2016)---------------------------------------------------- 11

*Lewis v. News-Press & Gazette,*

    782 F. Supp. 1338, 1342 (W.D. Mo. 1992)----------------------------------------- 20

*Lujan v. Defenders of Wildlife,*

    504 U.S. 555, 560–61 (1992)----------------------------------------------------- 15, 16

*McCord v. Bailey,*

    636 F.2d 606 (D.C. Cir. 1980)----------------------------------------------------- 28

*McDonald v. Smith,*

    472 U.S. 479, 480 (1985)--------------------------------------------------------- 27

*McFadden v. U.S.,*

    576 U.S. 186, 196 (2015)--------------------------------------------------------- 25

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,*

    466 U.S. 789, 816 (1984)--------------------------------------------------------- 22

*Menkes v. U.S. Dept. of Homeland Sec.,*

    637 F.3d 319, 334 (D.C. Cir. 2011)----------------------------------------------- 14

*Montana v. United States,*

    440 U.S. 147, 152 (1978)--------------------------------------------------------- 14

*NAACP v. Claiborne Hardware Co.,*

    458 U.S. 886, 913 (1982)).------------------------------------------------------- 26

*New York Times Co. v. U.S.,*

    403 U.S. 713 (1971) ------------------------------------------------------ 27

*Nixon v. Fitzgerald,* 457 U.S. 731, 752-53 (1982) ---------------------------- 8, 9

*Page v. United States,*

    729 F.2d 818, 820 (D.C. Cir. 1984) ------------------------------------- 14

*Palsgraf v. Long Island R.R. Co.,*

    248 N.Y. 339 (1928) -------------------------------------------------- 33, 34

*Pickering v. Board of Education,*

    391 U.S. 563, 573 (1968) ------------------------------------------------ 26

*Presley v. Commercial Moving & Rigging, Inc.,*

    25 A.3d 873, 888 (D.C. 2011) -------------------------------------------- 33

*R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 382 (1992) --------------------- 21, 22

*Raytheon Co. v. Ashborn Agencies, Ltd.,*

    372 F.3d 451, 453 (D.C. Cir. 2004) ------------------------------------- 15

*Rogers v. Lincoln Towing Service, Inc.,*

    771 F.2d 194 (1985) --------------------------------------------------- 31

*Secretary of State of Md. v. Joseph H. Munson Co., Inc.,*

    467 U.S. 947, 958 (1984) ---------------------------------------------- 25

*Sessions v. Dimaya,*

    138 S.Ct. 1204, 1212 (2018) ------------------------------------------- 25

*Snyder v. Phelps,*

    562 U.S. 443, 451–52 (2011) ------------------------------------------- 22

*Stern v. U.S. Gypsum, Inc.,*

    547 F.2d 1329, 1337 (7th Cir. 1977) ------------------------------------------------- 20

*Summers v. Earth Island Inst.,*

    555 U.S. 488, 493 (2009)------------------------------------------------------------- 15

*Tafuto v. Donald J. Trump for President, Inc.,*

    827 Fed.Appx. 112, 114 (2d Cir. 2020) ----------------------------------------------- 15

*Tah v. Glob Witness Publ'g, Inc.,*

    991 F.3d 231, 240 (D.C. Cir. 2021) --------------------------------------------------- 29

*Tri-Corp Housing Inc. v. Bauman,*

    826 F.3d 446, 449 (7th Cir.2016)------------------------------------------------------ 10

*U.S. v. Crews,*

    781 F.2d 826, 832 (10th Cir. 1986) --------------------------------------------------- 23

*United States v. Cruikshank,*

    92 U.S. 542, 552 (1875) ------------------------------------------------------------- 26

*United States v. Mouat,*

    124 U.S. 303, 307 (1888)------------------------------------------------------------- 19

*United States v. Wells Fargo Bank,*

    485 U.S. 351, 357 (1988)------------------------------------------------------------- 13

* *Virginia v. Black,*

    538 U.S. 343, 358 (2003)--------------------------------------------------- 21, 22, 23

*Youseff v. 3636 Corp.,*

    777 A.2d 787, 792 (D.C. 2001) ------------------------------------------------------- 33

<span style="letter-spacing:0.1em;">S</span>TATUTES

D.C. Code § 22-1805 -------------------------------------------------------- 29

D.C. Code § 22-3704 ------------------------------------------------- 35, 36

D.C. Code Ann. § 16-5501 ------------------------------------------------ 32

Westfall Act 28 U.S.C. § 2679(b) ------------------------------------------ 11

OTHER AUTHORITIES

167 Cong. Rec. S. 589, 1 (2021)-------------------------------------------- 13

167 Cong. Rec. S. 717, 1 (2021)-------------------------------------------- 13

3 J. Story, Commentaries on the Constitution of the United States § 1563, pp. 418-
    19 (1st ed. 1833)---------------------------------------------------------9

Bethany Allen-Ebrahimian, *Exclusive: Suspected Chinese Spy Targeted California
    Politicians*, Axios (December 8, 2020),: https://www.axios.com/china-spy-
    california-politicians-9d2dfb99-f839-4e00-8bd8-
    59dec0daf589.html?utm_source=twitter&utm_medium=social&utm_campaign=or
    ganic&utm_content=1100 --------------------------------------------------- 16

Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, CNN
    (February 10, 2021), https://www.npr.org/2021/02/10/966396848/read-trumps-jan-
    6-speech-a-key-part-of-impeachment-trial------------------------------------- 31

David Marchese, *Why Stacey Abrams is still saying she won*, New York Times (April 26, 2019), https://www.nytimes.com/interactive/2019/04/28/magazine/stacey-abrams-election-georgia.html?mtrref=www.google.com&gwh=92FEB489585384DDAFB875EF78CD865D&gwt=regi&assetType=REGIWALL ---------------------------------------------- 3

Kristina Peterson, *Iowa Election Challenge Alarms Some House Democrats*, Wall Street Journal (March 25, 2021), https://www.wsj.com/articles/iowa-election-challengealarms-some-house-democrats-11616677200 ------------------------------------- 3

Sarah Ferris and Ally Mutnick, *Democrat drops election contest in Iowa house race*, Politico (March 31, 2021), https://www.politico.com/news/2021/03/31/democrat-drops-election-contest-in-iowa-house-race-478736 ------------------------------------ 3

Test Act of 1673, 25 Car. II, c. 2 (U.K.)). ------------------------------------------ 20

The Federalist No. 72, p. 487 (J. Cooke ed. 1961) (A. Hamilton) ------------------------ 19

Whether a Former President May be Indicted and Tried for the Same Offense for Which He was Impeached by the House and Quitted by the Senate, 24 Opinions of the Office of Legal Counsel 110, 113 (2000) ------------------------------------- 14

<u>U.S. CONSTITUTION</u>

U.S. Const. art. I, § 3, cl. 7 ----------------------------------------------------------- 13

U.S. Const. art. I, § 6, cl. 2 ----------------------------------------------------------- 19

U.S. Const. art. II, § 1 ------------------------------------------------------------ 10, 12, 20

U.S. Const. art. II, § 2, cl. 2 --------------------------------------------------------- 19

U.S. Const. art. II, § 3 --------------------------------------------------------------- 10

x

Congressman Eric Swalwell brought this lawsuit, blaming his emotional infirmities on former President Trump, Donald Trump, Jr., and the other Defendants. Plaintiff's theories run directly afoul of well-established, important, constitutional doctrines. Despite his pledge to support and defend the Constitution of the United States, Mr. Swalwell comes to this Court directly attacking First Amendment doctrines which lie at the heart of the uniquely American traditions of free speech, free assembly, and freedom to petition the government without fear of reprisal. His allegations stem from political statements (often taken out of context) made by Defendants on social media, to the press, and at a political rally. In bringing this suit, the Congressman asks this Court to wade into turbulent political waters to decide what controversial speech should be favored. The Court should firmly reject that invitation.

The claims against former President Trump directly contravene the absolute immunity conveyed on the President by the Constitution as a key principle of separation of powers. Even while assuming, as we must at this stage, the averments in his Complaint are true, he has failed to plausibly plead any viable or plausible conspiracy theory against Defendants. Instead, he continues to repeat his steady diatribe of the same baseless and misleading allegations rejected by the Senate in Mr. Swalwell's second failed impeachment attempt earlier this year. His attempt at turning important and historic civil rights statutes into political weapons to weaken critical constitutional protections should be soundly rejected. The case should be dismissed.

1

## BACKGROUND

Donald J. Trump, the 45th President of the United States, is known for enthusiastic, passionate, and patriotic speeches. These addresses strongly support American values and vigorously oppose the agendas of Washington D.C.'s establishment bureaucrats. President Trump has fought, and continues to fight, against politics as usual as no American leader has before. While his passion, grit, and commitment has gained him admiration and love from many millions of Americans, it has also brought scorn from his political adversaries.

After the 2020 election, former President Donald J. Trump; his son, Donald Trump, Jr.; and countless others raised serious and important questions about the purported results of elections held in several states. Due to concerning incidents in several states, Mr. Trump and his supporters were engaged in litigation, recounts, and appeals in the weeks and months after the election. During this time, Mr. Trump reached out to his supporters to encourage their continued support as well as donations to support his efforts.

Post-election challenges are not unusual. For months after the election, a Democratic candidate for the U.S. House of Representatives continued to claim she was the winner of a Congressional seat in Iowa. Ms. Rita Hart continued to press her claim that she should have been the rightfully elected congresswoman for Iowa's 2nd

Congressional District[1] until she dismissed that action on April 5, 2021, five months after the election.[2] Ms. Hart's challenge came after a fully certified election and re-count under the state laws of Iowa. Ms. Hart was seeking to have the U.S. House of Representatives overturn the election despite the state's procedures.

Democratic members of Congress contested the certification of electors after the 2004 and 2016 elections. Stacy Abrams also persisted in claims that she won her race for Governor of Georgia for many months after the election, never officially admitting she lost;[3] instead, she alleged, "it was not a fair election," provided no credible evidence to that point, and refused to concede. Indeed, from the 2000 dispute between George W. Bush and Al Gore to the 1960 elector faceoff between John F. Kennedy and Richard Nixon, election disputes are part of the American democratic framework.[4] The challenges to the 2020 election were critical but hardly unique.

---

[1] Kristina Peterson, *Iowa Election Challenge Alarms Some House Democrats*, Wall Street Journal (March 25, 2021), https://www.wsj.com/articles/iowa-election-challengealarms-some-house-democrats-11616677200.

[2] Sarah Ferris and Ally Mutnick, *Democrat drops election contest in Iowa house race*, Politico (March 31, 2021), https://www.politico.com/news/2021/03/31/democrat-drops-election-contest-in-iowa-house-race-478736.

[3] David Marchese, *Why Stacey Abrams is still saying she won*, New York Times (April 26, 2019), https://www.nytimes.com/interactive/2019/04/28/magazine/stacey-abrams-election-georgia.html?mtr-ref=www.google.com&gwh=92FEB489585384DDAFB875EF78CD865D&gwt=regi&assetType=REGIWALL.

[4] Herb Jackson, *What happens when a state can't decide on its electors*, Roll Call (October 26, 2020) https://www.rollcall.com/2020/10/26/we-the-people-what-happens-when-a-state-cant-decide-on-its-electors/.

The specific allegations of this Complaint arise mostly from tweets, statements, and a rally at the Ellipse on January 6, 2021. Plaintiff selectively quotes former President Trump's speech, intentionally omitting critical parts, including former President Trump's unambiguous statement to his supporters that "everyone here will soon be marching over to the Capitol building to **peacefully and patriotically** make your voices heard."[5] (emphasis added). Further, Plaintiff has failed to plausibly allege any agreement or meeting of the mind between Defendants and anyone who participated in the January 6, 2021 riot.

### *The Allegations Against President Trump*

Representative Swalwell seeks to entangle Mr. Trump in a conspiracy by weaving his own conspiracy theory based on political speech taken out of context and actions of independent individuals with whom Mr. Trump never had contact.

The bulk of Representative Swalwell's allegations against former President Trump and Donald Trump, Jr. center around their promotion of and speaking at the January 6, 2021 rally at the Ellipse and their general political speech. *See* Compl. ¶¶1, 2, 3 (alleging statements made at the rally), ¶¶14, 25 (alleging pre-election statement of impending voter issues), ¶28-32 (alleging renewed allegations of voter fraud beginning on election night), ¶33 (alleging first speech post-election about voting issues), ¶¶35-39, ¶¶44-46, ¶49, ¶¶51-53, ¶¶56-58 (alleging various critiques of

---

[5] Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial,* *CNN*, NPR (February 10, 2021), https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

individual election officials), ¶86 (alleging statement for supporters to be there, it will be wild), ¶98 (alleging tweet regarding former Vice President Pence's authority), ¶¶122-126, 128, (alleging remarks by former President Trump at rally on January, 6 2021), ¶133 (alleging Trump tweeting a recording of rally on January, 6 2021 was encouraging violence), ¶138 (alleging an unrelated tweet by former President Trump was meant to inflame the situation at the Capitol).

Representative Swalwell is seeking to hold former President Trump and Donald Trump Jr. vicariously responsible for the unlawful acts of others, without showing any agreement between Mr. Trump and the rioters. Indeed, Representative Swalwell has failed to allege any direct statements by former President Trump encouraging anyone to participate in unlawful behavior and he conveniently omitted the portion of former-President Trump's remarks at the Ellipse, encouraging only **peaceful and patriotic** demonstration.

While he spills much ink on the 2020 election contests (often misconstruing and misrepresenting facts), he failed to lay any factual framework allowing the Court to connect those contests to some fictional conspiracy between the rioters and former President Trump. Representative Swalwell fails to provide any factual or legal support for these allegations other than the conclusory assertions of phone calls or other activity better explained by a president's duty to ensure the laws of the United States are faithfully executed and a political figure's petitioning the government for redress of grievances.

Further examples of the baselessness of the Complaint can be seen regarding Representative Swalwell's transparent attempt to misconstrue tweets and statements by substituting his own assumptions of subliminal messaging for the actual words used by the former president. Examples of this include Representative Swalwell's claims that former President Trump knew of how others would react to his statements and the actions they would take. Compl. ¶87 (alleging followers accurately understood a tweet), ¶90 (alleging President Trump intended a tweet not referencing violence to be a call for violence), ¶99 (alleging a tweet was intended to convince), ¶133 (alleging tweeting a video of the rally was encouraging violence).

Representative Swalwell further attempts to connect former President Trump to his conspiracy theory based on communications not involving Defendants. Compl. ¶¶88-89 (alleging, without making a credible allegation, the then-President of the United States was aware of posts made on Internet listservs), ¶¶92-95 (alleging other groups discussing action without alleging plausible facts showing that Defendants were involved in the discussions, or even aware of them).

Representative Swalwell then submits the statements of politicians who speculated former President Trump was involved in some conspiracy, even though those politicians lacked any direct knowledge of any relevant facts. *See* Compl. ¶¶162-165 (alleging Sens. McConnell and Thune can speak to Mr. Trump's culpability). Here, all of Plaintiff's allegations amount to conclusory anecdotes from others about the culpability of President Trump, wholly unsupported by plausible facts.

*The Allegations Against Donald Trump, Jr.*

Representative Swalwell's allegations against Donald Trump Jr. are even more spurious and erratic than the allegations against former President Trump. The allegations against Donald Trump Jr. boil down to two main contentions: (1) Donald Trump, Jr. promoted the rally on January 6, 2021 and (2) Donald Trump, Jr. spoke at the rally that allegedly incited the violence that took place at the U.S. Capitol later that day.

Representative Swalwell directly mentions Donald Trump Jr. in twenty-four paragraphs of his Complaint. In these paragraphs, Representative Swalwell alleges Donald Trump Jr. made allegations that the election was rigged; pressured elected officials, courts, and Congress to overturn the election (Compl. ¶¶16, 68, 72); and promoted and spoke at the rally on January 6, 2021 using emphatic language (Compl. ¶¶17, 70, 77, 116-119, 178, 211(d)). Representative Swalwell also alleges Donald Trump, Jr. challenged Republican members of Congress and insulted Democratic members of Congress. Compl. ¶¶73, 77. Further, on a particularly curious note, Representative Swalwell alleges that wearing a t-shirt in an Instagram picture in 2019 while fishing is indicative of being in a conspiracy with members of that organization almost two years later. Compl. ¶96.

## ARGUMENT

I.  **The Constitution Forecloses This Court from Exercising Jurisdiction Over President Trump for Actions Taken During His Presidency**

### a.  **Absolute immunity bars the claims against former President Trump.**

Courts have long recognized constitutional separation of powers requires broad and absolute presidential immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 752-53 (1982). This immunity extends to the "outer perimeter" of the President's duties. *Id.* at 756; *see also Chastain v. Sundquist*, 833 F.2d 311, 315 (D.C. Cir. 1987) (When defending against common law tort suits, [presidential immunity] is absolute, . . . subject only to the requirement that [his] actions fall within the outer perimeter of [his] official duties.").

Even when a plaintiff alleges a president's actions exceed his legal authority, the privilege still prohibits litigation. Otherwise, the rule would be swallowed whole by the exception; litigation would constantly test whether a particular "action was unlawful[] or was taken for a forbidden purpose." *Nixon,* 457 U.S. at 755.

America's executive powers are delegated to the President, U.S. Const Art. II, § 1, and he must be able to act decisively and fearlessly in executing those duties on behalf of Americans without fear of civil liability. *Nixon,* 457 U.S. at 751-52. The visibility of his office makes him an easily identifiable target for civil suits, which would distract from the exercise of his presidential duties. *Id* at 753.

The *Nixon* Court may have most succinctly laid out this critical rule, but in doing so it recognized principles as old as the Republic. Indeed, long ago Justice Story

recognized the President "must be deemed, in civil cases at least, to possess an official inviolability." 3 J. Story, Commentaries on the Constitution of the United States § 1563, pp. 418-19 (1st ed. 1833). Consequently, lawsuits against presidents for their actions while in office have been historically rare. *See Nixon,* 457 U.S. at 750-52, n.31 (explaining evidence that the founders assumed the President's immunity from damages liability and that "fewer than a handful of damages actions ever were filed against the President" prior to the early 1970s).

The limit to a President's absolute immunity is narrow; it is bounded by *purely* personal and *purely* unofficial actions which are not protected. *See Clinton v. Jones,* 520 U.S. 681, 696 (1997) (finding no immunity for purely private acts or acts outside of official duties); *Nixon,* 457 U.S. at 756 (recognizing absolute immunity within the "outer perimeter" of the president's official responsibilities). Indeed, cases where a President has been found susceptible to suit for an action taken during his presidency are non-existent in the various circuit courts of appeals.

Even Congress cannot abrogate this privilege since it is conferred by the Constitution rather than statute. *See Nixon,* 457 U.S. at 763, n.7 (Burger, C.J., concurring). If the coordinate branches started constricting immunity, the necessary result would be a politically rooted rule used to bludgeon one of the political branches by political adversaries for political purposes. Never would more be at stake than here when the very issue is the propriety of the speech of the then-President of the United States. Indeed, a political speech by the President is not at the "outer perimeter" of his duties—it is at the dead center.

9

It is well recognized that rousing and controversial speeches are a key function of the presidency. That is especially true when, as is the case here, the President is advocating for or against congressional action. "Speech is a large part of any elected official's job, in addition to being the means by which the official *gets* elected (or re-elected). Teddy Roosevelt called the presidency a 'bully pulpit,' and all public officials urge their constituents and other public bodies to act in particular ways." *Tri-Corp Housing Inc. v. Bauman,* 826 F.3d 446, 449 (7th Cir.2016); *see also, County of Santa Clara v. Trump,* 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017) (recognizing "the President certainly has the right to use the bully pulpit to encourage his policies").

Plaintiff has made a myriad of allegations regarding statements by former President Trump about the veracity and integrity of the processes of elections in the United States. He also made allegations relating to these statements that former President Trump supposedly pressured election officials to act.

The Constitution requires the President "preserve, protect and defend the Constitution of the United States." U.S. Const. art. II, § 1. He is also charged with taking "Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

Representative Swalwell may not have agreed with the way former President Trump executed his constitutional duties, but it was not for him to decide. The executive power rests with the President and him alone. U.S. Const. art. II, § 1, cl. 1.. While holding that office, former President Trump was free to advocate for the appointment and certification of electors, just as he was entitled to advocate for the passage or defeat of a constitutional amendment, or the reconsideration of a

10

congressional act over his veto even though the President does not directly participate in those congressional acts.

Plaintiff invites this Court to forge new territory and adopt a new rule which would be subjective in nature and encourage political opponents to take their disputes out of the public square and out of the halls of Congress and into the courtrooms to punish a president for disfavored speech. The President's absolute immunity fore-closes the jurisdiction of this Court.[6]

### b. The political question doctrine also bars the claims against President Trump.

Closely akin to absolute immunity is the political question doctrine. "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n. v. Am. Cetacean Soc.,* 478 U.S. 221, 230 (1986). There are several instances when the doctrine makes a case nonjusticiable, including when there is a "textually demonstrable constitutional commitment of the issue to a coordinate

---

[6] Even if former President Trump is not covered by absolute immunity, as a governmental actor, the claims against him are also foreclosed by immunity under the Westfall Act 28 U.S.C. § 2679(b). The allegations arose out of his allegations of political speech, clearly within the scope of his employment (*i.e.,* ensuring the faithful execution of the laws and carrying out his other Constitutional duties). Moreover, even if those doctrines did not apply, he would be protected by qualified immunity, as no Court has previously held a President liable for political speech. *See Jones v. Kirchner*, 835 F.3d 74, 84 (D.C. Cir. 2016). These immunities, of course, are narrower than the dispositive absolute immunity arising directly from the Constitution.

political department" and when it is impossible to decide an issue without making "an initial policy determination of a kind clearly for nonjudicial discretion." *Bancoult v. McNamara,* 455 F.3d 427, 432 (D.C. Cir. 2006) (citing *Baker v. Carr,* 369 U.S. 186, 217 (1962)).

Here, Plaintiff seeks a declaration and an injunction against Mr. Trump based on actions taken while he was President of the United States. Compl. at 63-64. Aside from the obvious problems with this prior restraint against speech, the adjudication of any injunction or declaration based upon the words or action of the then-President would improperly regulate the executive department, in violation of Article II, § 1, which requires the executive power be exercised solely by the President.

Moreover, the adjudication of all the allegations against former President Trump would require the Court to make a value determination about what is or is not proper for the President to say at a political speech when advocating for governmental action. As previously discussed, such value determinations are not of the type appropriate for the judiciary. Instead, such questions are solely left to the discretion of the political branches. Representative Swalwell and his collaborators had a full and fair opportunity to make their case at impeachment. They failed.

### c. The claims against President Trump are precluded by the Impeachment Judgment Clause, res judicata, and collateral estoppel.

The United States Senate held a trial, pursuant to their constitutional mandate to try impeachment cases, and acquitted former President Trump of allegations that he participated in a riot at the U.S. Capitol on January 6, 2021. 167 Cong. Rec.

S. 717, 1 (2021). On January 11, 2021, Democratic leadership brought Articles of Impeachment, which on January 13, 2021, were approved by the House of Representatives. On February 9, 2021, the Senate took up the trial. 167 Cong. Rec. S. 589, 1 (2021). The Senate trial lasted four days on the charge of "Incitement of Insurrection." On February 13, 2021, the Members of Congress by the rules established under the Constitution of the United States did not convict Mr. Trump of these charges. 167 Cong. Rec. S. 717, 17 (2021).

The Constitution provides that after impeachment proceedings a "party *convicted* shall nevertheless be liable and subject to Indictment, Trial, **Judgment** and Punishment, according to Law." U.S. Const. art. I, § 3, cl. 7 (emphasis added). Because the founders specifically limited this exception to those **convicted** of impeachment, it necessarily forbids further litigation of the same claims by those **acquitted** by the Senate, pursuant to the well-known statutory construction canon, of *expression unius est exclusion alterius. United States v. Wells Fargo Bank,* 485 U.S. 351, 357 (1988).

The clause creates an exception to the general rule prohibiting multifarious litigation over the same subject matter arising from the same transaction or occurrence. *See* Whether a Former President May be Indicted and Tried for the Same Offense for Which He was Impeached by the House and Quitted by the Senate*, 24

Opinions of the Office of Legal Counsel 110, 113 (2000) (specifically discussing criminal liability).[7]

This action is also precluded by collateral estoppel and res judicata. Representative Swalwell, a member of Congress and the manager of that impeachment trial, is now seeking to have this Court intervene and relitigate a matter already properly litigated before the United States Senate as an impeachment court.

Res judicata precludes further claims by the same parties or their privies after a final judgment on the merits. *Montana v. United States*, 440 U.S. 147, 153 (1979). This not only bars identical claims from being re-litigated in subsequent proceedings but also claims arising from the same transaction or occurrence. *See Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). Likewise, collateral estoppel (*i.e.,* issue preclusion) applies when a factual or legal issue is litigated and determined by a valid final judgment. *Menkes v. U.S. Dept. of Homeland Sec.*, 637 F.3d 319, 334 (D.C. Cir. 2011) (citing Restatement (Second) of Judgments § 27 (1982)). Even if Mr. Swalwell is not a privy of the House of Representatives, collateral estoppel applies because "issue preclusion does not require mutuality of parties." *Id.* (citing *Gov't of Rwanda v. Johnson,* 409 F.3d 368, 374 (D.C. Cir. 2005).

---

[7] The memorandum exclusively discusses the *criminal* liability of an acquitted president rather than civil liability, ultimately concluding it is a close call but such liability is not precluded by the impeachment trial. There is little to no scholarship on the issue of civil liability, probably because lawsuits like this are not reasonably foreseeable because of the robust absolute immunity of the President previously discussed.

14

A trial already occurred on Representative Swalwell's allegations. The Senate acquitted former President Trump. Undoubtedly, Plaintiff was disappointed with that result, but it does not give him a second bite at the apple to relitigate the issues here. These claims are precluded.

## II.    Plaintiff Lacks Standing to Bring His Claims Against Any Defendant

Standing is a threshold issue to the initiation and continuation of litigation. *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96-102 (1998)). To establish standing, a plaintiff must demonstrate three things: (1) an injury in fact that is concrete and particularized, (2) a causal connection between the injury suffered and the conduct of the defendant complained of, and (3) the remedy asked for is likely to redress that grievance. *See Tafuto v. Donald J. Trump for President, Inc.,* 827 F. App'x. 112, 114 (2d Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). When a Defendant moves to dismiss a claim for lack of subject matter jurisdiction, the burden is on the Plaintiff to establish standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

### a.  Plaintiff has not alleged a particularized injury causally connected to either Trump Defendant.

In *Lujan*, the Supreme Court elaborated upon the second element of standing requiring a plaintiff establish a causal connection between the injury suffered and the actions of the defendant. The Court determined the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e]

15

result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)).

Here, the Plaintiff failed to allege any concrete injury caused by Defendants. Instead, he has made conclusory allegations of unknown emotional harm. Mr. Swalwell's emotional health may very well be in tatters; however, Defendants did not cause that harm, rather it was the independent and intervening acts of third-party rioters.[8]

Representative Swalwell makes conclusory allegations of vague psychological injuries connected to Capitol rioters, not the Defendants. Indeed, neither in his verbose preliminary allegations nor in any specific count does he sufficiently explain how his emotional infirmities are connected to Defendants.

In Count 1, Representative Swalwell alleges he is "a party so injured" (meaning that he alleges he is someone injured by preventing an official from doing their job or taking an office). Compl. ¶184. In Count 3, Representative Swalwell claims "[a]s described, the Plaintiff was harmed by the rioting mob the Defendants incited" (with no description). Compl. ¶199. In Count 6, Representative Swalwell makes the groundless assertion that "Plaintiff suffered severe emotional distress" without explaining

---

[8] It is also probably that his emotional harm arises not from anything that happened on January 6, 2020, but rather from getting caught in a honeytrap by a spy for the Chinese Communist Party. *See* Bethany Allen-Ebrahimian, *Exclusive: Suspected Chinese Spy Targeted California Politicians*, Axios (December 8, 2020), https://www.axios.com/china-spy-california-politicians-9d2dfb99-f839-4e00-8bd8-59dec0daf589.html?utm_source=twitter&utm_medium=social&utm_campaign=organic&utm_content=1100. Perhaps instead of blaming his emotional injuries on Defendants, Mr. Swalwell should look to his own poor decisions.

16

how that distress manifested itself. Compl. ¶ 226. In Count 7, Representative Swalwell claims, "[a]s described earlier in the Complaint, the Defendants' actions caused the Plaintiff to suffer severe emotional distress." Compl. ¶234. In Count 8, Representative Swalwell makes several broad claims of harm including: Plaintiff was in fact harmed (Compl. ¶245), Plaintiff feared imminent harm (*Id.* at ¶244), the mob terrorized and injured scores of people including Plaintiff (*Id.* at ¶242). Finally, in Count 9, Representative Swalwell alleges his harm was reasonably foreseeable, he suffered harm, and it was described previously in the Complaint. Compl. ¶¶ 258-59. At no point does he explain how the riot affected or damaged him. Moreover, he fails to lay a proper causal connection to the allegations against Defendants. Sure, he explains his displeasure with tweets, statements, and speeches but he has not connected those utterances with the specific act of any individual who caused him harm.

### b. Members of Congress lack standing to sue under Section 1985(1).

Representative Swalwell alleges Defendants in this case interfered with the performance of his official duties as a member of Congress, as well as the duties of his fellow Representatives and Senators. Compl. ¶169. He also alleges the intent was to injure the property and persons of the members of Congress.[9] *Id.* at ¶¶171-72. Representative Swalwell further alleges this was done as part of the

---

[9] In the Complaint, Plaintiff often complains of alleged harm to others, including Mr. Swalwell's Democratic colleagues in the House and Senate. This surplusage confuses his already weak attempt at pleading standing. Of course, at the most, Plaintiff would have standing to sue on his own behalf, not his colleagues' behalf.

larger scheme to prevent Joseph Biden and Kamala Harris from being certified by Congress. *Id.* at ¶¶12, 168.

Plaintiff relies upon 42 U.S.C. § 1985(1) which provides:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

42 U.S.C. § 1985(1). A claim under § 1985(1) is only available to specific federal officials. *See Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 718 (9th Cir. 1981) (explaining that § 1985(1) is only applicable to federal officers). Specifically, standing is conveyed only on officers of the United States and those holding an office, trust, or place of confidence under the United States. Members of the U.S. House of Representatives are not covered by any of these categories. Consequently, Mr. Swalwell lacks standing to bring this lawsuit.[10]

---

[10] Since a § 1986 claim is derivative of a § 1985 claim, Mr. Swalwell's lack of standing applies to both statutes.

1.   *Members of Congress are not officers under the United States, nor do they hold office under the United States.*

Members of Congress, including both Senators and Representatives, are not "officers" of the United States, nor do they hold an "office under the United States." Specifically, "unless a person in the service of the government, therefore, holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States." *United States v. Mouat*, 124 U.S. 303, 307 (1888). Additionally, as the Supreme Court explained in 2010, "[t]he people do not vote for the 'Officers of the United States.' U.S. Const. art. II, § 2, cl. 2. They instead look to the President to guide the 'assistants or deputies . . . subject to his superintendence.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010) (quoting The Federalist No. 72, p. 487 (J. Cooke ed. 1961) (A. Hamilton)). Furthermore, the Appointments Clause makes it clear the President appoints the Officers of the United States. *See* U.S. Const. art. II, §  2, cl 2.

The Constitution provides members of Congress are not office holders "under . . . the United States." The Ineligibility Clause specifically states, "no person holding any Office under the United States, shall be a member of either House during his Continuance in Office." U.S. Const. art. I, § 6, cl 2. Ergo, a member of Congress is not in an office under the United States, otherwise the Constitution would state they could not hold more than one such office. In defining an office of the United States, the United States Court of Claims defined it as a "public station or employment

19

established or authorized by Congress and conferred by appointment of the Government." *Dalton v. U.S.*, 71 Ct. Cl. 421, 425 (1931).

>  **2.**   *Members of Congress do not hold a position of trust or place of confidence with the United States as delineated in § 1985(1).*

Section 1985(1) also gives standing to individuals who hold a position of trust or a place of confidence under the United States. Again, members of Congress fall into neither category. The Constitution specifically delineates between senators, representatives, and those holding an office of trust or profit under the United States, when it prohibits any of the above from serving as electors. U.S. Const. art. II, § 1. In common law, an office of trust or profit referred exclusively to those in the employ in the executive, judiciary, or the church. Benjamin Cassady, *"You've Got Your Crook, I've Got Mine": Why the Disqualification Clause Doesn't (Always) Disqualify*, 32 Quinnipiac L. Rev. 209, 279 (2014). English statutes apply the term to offices conferred by the Crown, not by Parliament. *Id.* (citing Test Act of 1673, 25 Car. II, c. 2 (U.K.)).

There are few examples of those who hold a place of confidence under the United States. A district court has applied that term to state court judges since they decide federal constitutional issues and are bound by federal law. *See Lewis v. News-Press & Gazette Co.,* 782 F. Supp. 1338, 1342 (W.D. Mo. 1992). Other authority suggests all the categories listed in Section 1 are limited to those who carry out and apply the law. *See Stern v. U.S. Gypsum, Inc.,* 547 F.2d 1329, 1337 (7th Cir. 1977) (explaining the statutory history of § 1985(1) and concluding the purpose of the legislation

20

was to protect the "federal interest in the carrying out of federal functions."). One thing is clear, the Congress that adopted the statute could very well have specifically made it applicable to themselves and their successors. They declined to do so. Mr. Swalwell is not of a class of individuals who has standing to bring a claim under § 1985(1). Further, because his § 1986 claim is derivative, he lacks standing to bring either of his federal claims.

### III.   Well Established First Amendment Law Bars Every Claim Made by Representative Swalwell, Showing his Real Endgame is to use this Litigation to Score Political Points.

The factual allegations Representative Swalwell has raised against former President Trump and his son Donald Trump, Jr. involve conduct fully protected by the First Amendment of the United States Constitution. The First Amendment provides "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble, and to petition the Government for redress of grievances."

The hallmark of the protection of free speech is to allow "free trade in ideas"— even, arguably especially, ideas a majority of people might find distasteful or discomforting. *Virginia v. Black*, 538 U.S. 343, 358 (2003). Thus, the First Amendment "ordinarily" denies "the power to prohibit dissemination of social, economic and political doctrine" even when politically unpopular. *Id.* The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992). Content-based regulations are presumptively invalid. *Id.*

21

Plaintiff is an attorney and a member of Congress, sworn to support and defend the Constitution. He knows the First Amendment decisively bars his claims and the political speech of which he complains is at the dead center of the constitutional protections of speech. *See Mills v. Alabama*, 384 U.S. 214, 218 (1976 ("[T]here is practically universal agreement that a major purpose of the [First Amendment] was to protect the free discussion of governmental affairs."). Indeed, "political speech is entitled to the fullest possible measure of constitutional protection." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984).

"[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–759 (1985)). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder*, 562 U.S. at 452. That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Id.* Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Id.*

The First Amendment protects Defendants' rights to speech, expression, assembly, and to petition for redress of grievances. Limitations to these rights are narrow. *Black,* 538 U.S. at 366 (holding speech and expression in the political context is deserving of expanded constitutional protections) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 402 n.4).

22

### a. The incitement and "true threats" standards protect the speech at issue in this case.[11]

Representative Swalwell seeks to weaken important protections found in *Brandenburg v. Ohio* when he argues the alleged statements at issue somehow incited violence and therefore are outside the protection of the First Amendment. 395 U.S. 444 (1969). Speech only loses its First Amendment protection when there is an incitement to imminent lawless action, rather than mere advocacy. *Brandenburg,* 395 U.S. at 449.

Similarly, speech can be stymied when it announces a "true threat," meaning the speech contains a serious expression of an intent to commit an unlawful act of violence to a particular individual or group of individuals." *Black,* 538 U.S. at 359. Such speech must convey a gravity of purpose and likelihood of execution to constitute speech beyond the pale of protected vehement, caustic, unpleasantly sharp attacks on government and public officials. *U.S. v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986).

Given that Donald J. Trump was the President of the United States, it is difficult to imagine speech cloaked with more constitutional protection than the alleged expressive conduct—tweets, press conferences, speeches, and meetings with government officials—Plaintiff seems to assert violates §§ 1985(1) and 1986, as well as forms the basis for state charges of inciting violence, assault, disorderly conduct, and intentional and negligence infliction of emotional distress.

---

[11] Likewise, these same doctrines apply to and defeat the Washington D.C. torts pled by Plaintiff under supplemental jurisdiction.

Turning district courts into the arbiters of campaign speech would be a particularly troubling precedent.

Moreover, to hold that Mr. Trump's statements would make him civilly liable would turn district courts into arbiters of political speech. By Plaintiff's logic, Congresswoman Maxine Waters was far more culpable for inciting violence when she encouraged people to harass Trump Administration appointees,[1] and when she recently encouraged rioters to "get more confrontational" if her favored verdict was not returned in the *State v. Chauvin* case in Minnesota.[2] While Americans may disagree with the tone and language used by their political adversaries, turning courts loose to police that speech is forbidden by the First Amendment, except in the most severe circumstances.

### b. Plaintiff's reading of the federal statutes is so broad and vague as to make them susceptible to a facial challenge.

Plaintiff suggests that this Court read § 1985(1) so broad as to allow it to declare tweets, statements, and speeches made by politicians can be overt acts in an unlawful conspiracy. More troubling, he suggests that § 1986 legally requires politicians to alter their speech should they discover that listeners might engage in their own unlawful conspiracy. If he is right (he is not), and the statutes are that broad and vague (they are not), then it would make these important statutes susceptible to facial challenges due to overbreadth and vagueness.

The overbreadth doctrine allows facial challenges to boundless statutes to prevent the chilling of First Amendment speech. *See Secretary of State of Md. v. Joseph*

24

*H. Munson Co., Inc.*, 467 U.S. 947, 958 (1984). The void for vagueness doctrine ensures citizens are on notice of what a statute proscribes and also guards against arbitrary or discriminatory enforcement. *See Sessions v. Dimaya,* 138 S. Ct. 1204, 1212 (2018).

Should Plaintiff's construction of §§ 1985-86 be adopted, it would lead to a boundless statute essentially holding politicians vicariously liable for the actions of their supporters, substantially chilling important political speech. Moreover, the broad and vague prescriptions of the statute would encourage selective enforcement, inevitably based upon the political affiliations of the enforcer. Simply put, Mr. Swalwell's proposed interpretation of the statutes provides no way to draw clear lines, requiring they be stuck down as facially invalid.

But these historic statutes need not be endangered. Using the constitutional avoidance canon, the Court should recognize § 1985 only regulates conspiracies where there is an agreement to perform an overt act extending beyond protected political speech. *See McFadden v. U.S.,* 576 U.S. 186, 196 (2015) (requiring avoidance be used only when courts must choose between competing plausible interpretations). Such a construction would also save § 1986, because actions under that statue are dependent on an enforceable § 1985 conspiracy.

    *c.* **The Trump Defendants had a First Amendment right to petition the government for redress of grievances.**

In addition to their rights to free speech and assembly, Defendants have a First Amendment right to petition the government for redress of grievances. When the

petition involves matter of public concern, the effort to legally influence lawmakers and government officials enjoys an even higher presumption of protection; our republic depends upon the "free and unhindered debate on matters of public importance." *Pickering v. Board of Education*, 391 U.S. 563, 573 (1968).

To make it more likely one's concerns receive consideration and a response, the people can peaceably assemble to make their voices louder when seeking redress. *See United States v. Cruikshank*, 92 U.S. 542, 552 (1875) ("The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances . . . is an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States"). The First Amendment is meant to protect the "unfettered interchange of ideas for bringing about the political and social changes desired by the people." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985). "[T]he Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Id.* (citing *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982)).

But just because the right to petition for a redress of grievances is important, that does not mean it is necessarily comfortable:

> [E]xercise of the right to petition 'may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public official. . . .' The First Amendment requires that we extend substantial 'breathing space' to such expression, because a rule imposing liability whenever a statement was accidently or negligently incorrect

26

>would intolerably chill 'would–be critics of official con-
>duct . . . from voicing their criticism.'

*McDonald v. Smith*, 472 U.S. 479, 480 (1985).

Elections are often hotly contested, and they are certainly a matter of public concern. As Congress is given the duty of deciding whether to certify the votes of electors, Defendants had a right to advocate for their preferred outcome. constitution- ally protected

### d.  Prior restraints against speech are presumptively unconstitutional.

In addition to seeking monetary damages for his alleged emotional distress, Plaintiff seeks an injunction, requiring Defendants to give Swalwell seven days' notice of rallies or events so he may determine whether he wants to seek court intervention in stopping the event. Compl. at 63-64 (Prayer for Relief). He also seeks prospective relief by way of a declaration. *Id.* These are textbook examples of a prior restraint against speech.

Any prior restraint bares a heavy presumption against constitutional validity. *New York Times Co. v. U.S.,* 403 U.S. 713 (1971). A prior restraint is an administrative or judicial order, such as an injunction, restraining specific communications when issued in advance of when the communication is to occur. *See Alexander v. U.S.*, 509 U.S. 544, 549 (1993).

Plaintiff comes to the Court seeking advance notice of his adversaries' political rallies and events, so he can attempt to persuade the judiciary to intervene. This

remarkable request is unique and unprecedented because it flies in the face of critical First Amendment protections. It must be dismissed out of hand.

## IV.    Plaintiff Failed to Plausibly Plead Any of His Nine Counts.

Plaintiff is charged with pleading his Complaint, so it plausibly lays out a legally recognized case against Defendants. *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545* (2007). While he need not include "detailed factual allegations," he must do more than state an unadorned "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Moreover, Plaintiff's conspiracy allegations must be pled with particularity. *See Gometz v. Culwell*, 850 F.2d 461, 464 (7th Cir. 1988); *McCord v. Bailey,* 636 F.2d 606 (D.C. Cir. 1980).

A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although for the purposes of a motion to dismiss the court must take the factual allegations in the complaint as true, the court is not bound to accept as true a legal

28

conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 679. Moreover, the Court can take judicial notice of facts extrinsic to the Complaint if they are not reasonably subject to the dispute. *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017). Because Plaintiff is a public official and because the facts underlying the allegations in the Complaint are of public concern, Plaintiff must plausibly plead Defendants acted with actual malice. *See Tah v. Glob. Witness Publ'g, Inc.,* 991 F.3d 231, 240 (D.C. Cir. 2021). Yet, none of his allegations rise to the level of actual malice.

### a.  Plaintiff's § 1985(1) claim is implausible and hopelessly flawed.

To succeed in a claim under § 1985(1), Plaintiff must plausibly plead (1) a conspiracy (2) to prevent by force, intimidation, or threat, (3) a covered federal official,[12] (4) either from discharging official duties, by inducing the official to leave post, or by injuring the official on account of the lawful discharge of duties. 42 U.S.C. § 1985(1).

Representative Swalwell failed to plead with particularity (or even plausibly) any agreement[13] to obstruct Congress from conducting its business. It is insufficient to allege Defendants made political statements by social media and at a rally meant to persuade political officials. Instead, he was required to plausibly plead an

---

[12] As previously explained, *infra*, Plaintiff has failed to allege that as a member of Congress, he is a covered official pursuant to Section 1985(1).

[13] Representative Swalwell also claims he is entitled to recover under an aiding and abetting theory pursuant to D.C. Code § 22-1805. However, just as he has failed to properly allege a conspiracy; he has also failed to allege Defendants aided and abetted any rioters.

agreement intended to obstruct the business of Congress in certifying the votes of electors. Such a conspiracy would need to include Defendants and specific individuals who rioted at the Capitol. Plaintiff has not and cannot make such an allegation.

An agreement to make statements to persuade politicians to act is insufficient. If the law stated otherwise, every lobbyist, whip, and advocacy organization would constantly be sued for violating the statute. Instead, the agreement must be to affect an official function by "force, intimidation, or threat." Plaintiff can point to no such agreement.

Instead, Mr. Swalwell advances unfounded claims regarding Mr. Trump's political activity, including his speeches, debate performance, and tweets. He asks this Court to read into Mr. Trump's *political speech* and find he thereby entered into a conspiracy to interfere with the performance of official actions. Such action by this Court or any other would have the effect of drastically chilling political speech and cluttering the dockets of district courts nationwide with political lawsuits seeking to damage political adversaries.

Not only is this theory far-fetched, but it is also in direct opposition to many of the statements made by Mr. Trump at the rally in question. For example, Mr. Trump stated in his speech at the rally in the District of Columbia on January 6, 2021, "everyone here will soon be marching over to the Capitol building to **peacefully and**

**patriotically** make your voices heard."[14] (emphasis added). Mr. Trump further implored the crowd, "[w]e're going to walk down to the Capitol, and we're going to cheer on our brave Senators, and Congressmen and women."[15] These are not the words of incitement, but the words of a person seeking political support for their cause and entreating their supporters to compel other politicians to hear their voices.

It is not enough that an allegation be consistent with conspiracy if it is "just as much in line with a wide swath" of legitimate activities. *Twombly,* 550 U.S. at 554. In *Twombly,* the Court noted, while the allegations there were consistent with an illegal conspiracy, they were also consistent with legal actions based on unchoreographed free-market behavior. Here, the out-of-context snippets from speeches, debates, and tweets cited by Plaintiff support nothing more than a political speech aimed at affecting Congressional action by appealing political supporters.

### b.   Likewise, Plaintiff has not and cannot state a claim under § 1986.

A § 1986 claim is derivative of § 1985 liability. *See Rogers v. Lincoln Towing Service, Inc.,* 771 F.2d 194 (1985). Liability under the statute is dependent on a showing a defendant had actual knowledge of a § 1985 conspiracy, had the ability to stop the conspiracy, and negligently refused or failed to do so. *See Brandon v. Lotter,* 157 F.3d 537, 539 (8th Cir. 1998).

---

[14] Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, CNN (February 10, 2021), https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

[15] *Id.*

31

Representative Swalwell has broadly alleged former President Trump and Donald Trump, Jr. were aware of the potential actions of their supporters. That, however, is not enough to contrive a claim under this section. There is not a single factual allegation in the Complaint that Mr. Trump and Donald Trump, Jr. were aware of any **actual** plans to riot at the U.S. Capitol.

Representative Swalwell broadly alleges there were Trump supporters discussing their interpretations of Mr. Trump's tweets and plans to act. The Complaint fails to allege Mr. Trump or Donald Trump, Jr. were aware of the specific websites alleged in his Complaint, with anything more than broad conclusions. It is implausible to suggest Defendants had actual knowledge of statements made on the deep corners of the Internet. Plaintiff's failure to plead Defendants had actual, or even constructive notice of any specific conspiracy is fatal to his § 1985(1) claim, requiring its dismissal.

### c.  Plaintiff also insufficiently plead his D.C. law claims, over which the Court should decline to exercise supplemental jurisdiction.

Initially, the Court should exercise its discretion and decline to exercise supplemental jurisdiction over the claims brought under D.C. law, because of the infirmity of the federal claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639–40 (2009). Nevertheless, he has failed to state a claim for each of those counts as well.

In addition to the *Twombly* standard, the D.C. law substantive claims should be viewed through the lens of the policy of Washington, D.C. and its stout Anti-SLAPP statute. D.C. Code Ann. § 16-5501, *et seq.*. While the special motion to dismiss

delineated in that statute is inapplicable in federal court, the statute is still important as it clearly lays out D.C.'s strong preference that laws not be used to discourage the "right of advocacy." This policy weighs heavily in favor of dismissal.

### 1. *Negligence law is inapplicable to this political dispute.*

The negligence standard in D.C. is familiar and well-established: no defendant is liable for negligence unless that defendant specifically owes the plaintiff some duty of care as a matter of law. *See Haynesworth v. D.H. Stevens Co.,* 645 A.2d 1095, 1098 (D.C. 1994) (citing *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339 (1928); *Presley v. Commercial Moving & Rigging, Inc.,* 25 A.3d 873, 888 (D.C. 2011). Once such a legal duty is established, the plaintiff must also show a deviation from that duty, and a causal relationship between that deviation and the harm suffered by the plaintiff. *See Youseff v. 3636 Corp.,* 777 A.2d 787, 792 (D.C. 2001). Here, Mr. Swalwell can plead none of those elements, further dooming his negligence claims.

Representative Swalwell claims former President Trump and Donald Trump, Jr. are liable under this cause of action for two reasons: (1) allegations of voter fraud in the weeks before the January 6, 2021 rally and (2) the words of Mr. Trump and Donald Trump Jr. on January 6, 2021. Representative Swalwell's claim is woefully insufficient, even at the pleading stage. Even though he presents some excerpts of the speeches presented on January 6, 2021, Representative Swalwell largely omits language unambiguously contradicting any premise that Defendants sought anything other than peaceful protests. Nevertheless, the statements he does allege are still insufficient to show negligence.

33

A. <u>Speakers at political rallies do not owe a duty of care to members of Congress.</u>

By bringing his negligence claims, Plaintiff advocates for another boundless rule with severe ramifications. Since the dawn of the Republic and before, politicians have expressed their passions in political speeches. The important First Amendment protections for those speeches have already been discussed in detail. But claiming political speech can give rise to negligence liability is also troubling.

In essence, Mr. Swalwell argues that speakers should be vicariously liable for the acts of the listeners. Indeed, he might wonder if he would be liable because of his and his Democratic colleagues' rhetoric which encouraged left-wing activist James Hodgkinson to shoot Capitol Police Officer Crystal Griner, Congressman Steve Scalise, and others in June 2017. Perhaps Senator Rand Paul might also have a cause of action due to the violent attack he suffered at the hands of his fanatical neighbor.

Of course, if similar lawsuits were brought based upon those incidents against Mr. Swalwell and his colleagues, they would inevitably be making the same arguments, and rightfully so. As a matter of law, political speakers do not owe a legally enforceable duty of care to their adversaries or others who might find themselves in the path of impassioned supporters. Like the infamous firework that harmed Ms. Palsgraf almost a century ago, the harm is simply too remote and unforeseeable to give rise to a duty of care. *See, e.g., Palsgraf,* 248 N.Y. at 341, 354.339. Whether political speech is negligent is a question for voters, not courts.

34

B. <u>Mr. Swalwell cannot plead any deviation from any duty of care or a causal link to his emotional infirmities.</u>

Plaintiff cannot escape, even at the pleading stage, that the Trump Defendants acted responsibly. As previously discussed, former President Trump simply called for **peaceful and patriotic** demonstrations. Should his statements be held negligent, then district courts will be very busy weighing the legal reasonableness of statements from thousands of politicians. Aside from the obvious First Amendment pitfalls, such a rule would put the judiciary in an untenable position.

Finally, just as he lacks standing, Mr. Swalwell failed to properly allege a causal connection between acts of any Defendant and his own psychological and emotional infirmities. Mr. Swalwell has failed to plausibly plead any of the elements of negligence; as with the others, those counts also fail.

### 2. *Representative Swalwell's failure to allege an injury to his person or property defeats his bias claims.*

Representative Swalwell's statutory tort claim for bias pursuant to D.C. Code § 22-3704 and pled in Count 5 of the Complaint fails for all the reasons discussed elsewhere, especially since, incredibly, he alleges the use of political language he finds offensive gives rise not only to a cause of action but an actual crime. According to Representative Swalwell calling someone a radical left Democrat, weak Republican, or an assortment of other phrases will get you arrested or sued in Washington, D.C. Compl. ¶¶211-212. Hogwash.

This claim fails for an independent reason, however. It requires that Representative Swalwell plead an actual injury suffered to his *person or property*. D.C.

35

Code § 22-3704. This section does not provide for the recovery for psychological or emotional harm. Mr. Swalwell failed to allege any actual harm to his person or property, which alone is fatal to his bias claim.

      3.     *Representative Swalwell's Complaint does not meet the high burden of pleading intentional infliction of emotional distress.*

To state a claim for intentional infliction of emotional distress Plaintiff must possibly plead facts showing "(1) extreme and outrageous conduct on the part of the defendant[], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213, 1260 (D.C. 2016). "The standard for 'extreme and outrageous conduct' is exceptionally demanding. 'Conduct is considered "extreme and outrageous" when it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'" *Bonner v. S-FER International, Inc.*, 207 F. Supp. 3d 19, 25 (D.D.C. 2016). Insults, threats, and indignities are insufficient for meeting this rigorous standard. *Id.* The harm suffered by a plaintiff must include severe emotional distress, "of so acute a nature that harmful physical consequences are likely to result." *Competitive Enterprise Institute,* 150 A.3d at 1261.

Plaintiff has not and cannot meet this high standard. As an initial matter, he has simply pled political speech by Defendants he apparently found distasteful. This does not and cannot meet the rigorous standard for extreme and outrageous conduct. Moreover, he has failed to explain how his emotional infirmities are so severe as to

likely result in harmful physical consequences. This claim, too, fails and must be dismissed.

CONCLUSION

Plaintiff's claims are but another in a series of baseless attacks made by the political opponents of Donald J. Trump. Plaintiff's Complaint is an abuse of the legal system and an improper attempt to harass and malign a political opponent and his son, Donald Trump, Jr.. Donald J. Trump and Donald Trump, Jr. respectfully request this Court dismiss Plaintiff's Complaint in its entirety as Plaintiff lacks standing, and the Complaint fails to state even one claim upon which relief may be granted.

Dated: May 24, 2021                         Respectfully submitted,


/s/ _____
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump*
*and Donald Trump, Jr.*

## CERTIFICATE OF SERVICE

I certify that on May 24, 2021, a copy of the foregoing was filed with the Clerk using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ _____
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump
and Donald Trump, Jr.*

38