UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br><br>ERIC SWALWELL, )<br> )<br> *Plaintiff,* )<br> )<br> v. )<br> )<br>DONALD J. TRUMP, et al., )<br> )<br> *Defendants.* )<br>_____ ) | Civil Case No. 1:21-cv-00586 APM |

**REPLY IN SUPPORT OF DONALD J. TRUMP
AND DONALD TRUMP JR.'S MOTION TO DISMISS**

Jesse R. Binnall (VA022)
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump and
Donald Trump, Jr.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ I

TABLE OF AUTHORITIES ........................................................................ II

I.   The Constitution Forecloses Plaintiff's Claims. ................................. 2

    a.   President Trump is Absolutely Immune. ...................................... 2

    b.   President Trump's and Donald Trump, Jr.'s political Speech was protected by the First Amendment. .............................................. 8

II.   Plaintiff Lacks Standing. .................................................................... 16

    a.   Whether Plaintiff's claims are covered by the terms of the statute is a threshold matter properly considered in this Motion to Dismiss. ..................................................................................... 16

    b.   Plaintiff is not covered by § 1985(1) because under controlling Supreme Court precedent, that statute only grants a cause of action based on injuries to federal officers. .................................. 17

    c.   Plaintiff failed to allege a concrete harm sufficient to invoke Article III standing. ................................................................... 20

III.   Plaintiff Has Failed to State a Claim Upon Which Relief May be Granted. .............................................................................................. 21

    a.   Plaintiff does not adequately allege all elements for a conspiracy claim as there are not enough factually supported claims for the court to plausibly find President Trump had intent or knowledge. ................................................................................. 21

IV.   Likewise, Plaintiff's D.C. and common law claims also fail. ............ 25

    a.   Aiding and Abetting .................................................................... 25

    b.   Negligence ................................................................................... 26

    c.   Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIED) .................................... 27

    d.   Civil Action for Bias Crimes Under D.C. Code § 22-3704 .......... 29

CONCLUSION ........................................................................................... 29

CERTIFICATE OF SERVICE ..................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*3M Co. v. Boulter*, 842 F. Supp.

2d 85 (D.D.C. 2012) ................................................................................... 26

*Bell Atlantic Corp. v. Twombly,*

550 U.S. 544 (2007) ................................................................................... 24

*Board of Trustees of U. of Dist. of Columbia v. DiSalvo,*

974 A.2d 868 (D.C. Cir. 2009) .................................................................. 26

*Brandenburg v. Ohio,*

395 U.S. 444 (1969) ..................................................................................... 9

*Cal. Motor Transport Co. v. Trucking Unlimited,*

404 U.S. 508 (1972) ................................................................................... 10

*Canlis v. San Joaquin Sheriff's Posse Comitatus,*

641 F.2d 711 (9th Cir. 1981) ..................................................................... 19

*Crowley v. N. Am. Telecommunications Ass'n,*

691 A.2d 1169 (D.C. Cir. 1997) ................................................................ 28

*Davis v. Megabus Northeast LLC,*

301 F. Supp. 3d 105 (D.D.C. 2018) ...................................................... 27, 28

*Diulus v. Churchill Valley Country Club,*

601 F. Supp 677 (W.D. Pa. 1985) ............................................................. 19

*Flax v. Schertler*,

    935 A.2d 1091 (D.C. Cir. 2007) ................................................................ 26

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,

    561 U.S. 477 (2010) ............................................................................... 4, 19

*Griffin v. Breckenridge*,

    403 U.S. 88 (1971) ................................................................................ 17, 18

*Halberstam v. Welsh*,

    705 F.2d 472 (D.C. Cir. 1983) ......................................................22, 23, 25

*Harris v. U.S. Dept. of Veterans Affairs*,

    776 F.3d 907 (D.C. Cir. 2015) ............................................................... 28

*Hedgepeth v. Whitman Walker Clinic*,

    22 A.3d 789 (D.C. Cir.  2011) ................................................................ 28

*Jones v. Howard Univ., Inc.*,

    589 A.2d 419 (D.C. Cir. 1991) ............................................................... 28

*Knight First Amend. Inst. at Colum. Univ. v. Trump*,

    928 F.3d 226 (2d Cir. 2019) .................................................................... 5

*Kush v. Rutledge*,

    460 U.S. 719 (1983) ................................................................................ 18

*Lewis v.  News-Press & Gazette Co.*,

    782 F. Supp. 1338 (W.D. Mo. 1992)........................................................ 20

*Lobosco v. Falsetti*,

    No. 09–01455, 2010 WL 4366209 (D.N.J. Oct. 28, 2010) ....................... 19

*Lynch v. President of the U.S.,*

    2009 WL 2949776 (N.D. Tex. Sept. 14, 2009) ........................................................... 5

*McKethean v. Washington Metro. Area Transit Auth.,*

    588 A.2d 708 (D.C. Cir. 1991) ................................................................................... 27

*Miller v. Indiana Hosp.,*

    562 F. Supp. 1259 (3d Cir. 1983) .............................................................................. 18

*Morse v. Frederick,*

    551 U.S. 393 (2007) .................................................................................................. 15

*Myers v. U.S.,*

    272 U.S. 52 (1926) ...................................................................................................... 4

*Nixon v. Fitzgerald,*

    457 U.S. 731 (1982) .................................................................................................... 2

*Rice v. District of Columbia,*

    774 F. Supp. 2d 25 (D.D.C. 2011) ............................................................................ 28

*Scales v United States,*

    367 U.S. 203 (1961) .................................................................................................... 9

*See Halperin v. Kissinger,*

    578 F. Supp. 231 (D.D.C. 1984 ................................................................................. 4

*See Snyder v. Phelps,*

    562 U.S. 443 (2011) .................................................................................................... 4

*Spokeo, Inc. v. Robins,*

    136 S. Ct. 1540 (2016) .............................................................................................. 21

*Stern v. U.S. Gypsum, Inc.*,

    547 F.2d 1329 (7th Cir. 1977) ....................................................................... 20

*Thomas v. Collins*,

    323 U.S. 516 (1945) ........................................................................................ 15

*United States v. Alvarez*,

    567 U.S. 709 (2012) .......................................................................................... 9

*United States v. Mouat*,

    124 U.S. 303 (1888) ........................................................................................ 19

*Windsor v. The Tennessean*,

    719 F.2d 155, 161 (6th Cir. 1983) ................................................................. 20

## Statutes

42 U.S.C. § 1985 ....................................................................................... passim

42 U.S.C. § 1986 .................................................................................... 21, 25

U.S. Const. Art. III ..................................................................................... 20

## Other Authorities

Alton L. Lightsey, *Constitutional Law: The Independent Counsel and the Supreme*

    *Court's Separation of Powers Jurisprudence*, 40 UFLLR 563, 573 (1988) .............. 3

Andrew M. Wright, *The Take Care Clause, Justice Department Independence, and*

    *White House Control*, 121 WVLR 353, 385 (2018) ................................... 3

Annie Gowen, *Handful of protestors arrested during 'Occupy Congress'*, WA. POST

    (Jan. 17, 2012) .......................................................................................... 12

Cheyenne Haslett, *Dreamers protest on Capitol Hill on DACA deadline day*, ABC NEWS (Mar. 5, 2018), https://abcnews.go.com/Politics/dreamers-protest-capitol-hill-daca-deadline-day/story?id=53539262 ....................................................................... 12

Gary Fineout, *Biden tells DeSantis to 'get out of the way' amid Covid surge*, (Aug. 3, 2021, 6:03 PM), https://www.politico.com/states/florida/story/2021/08/03/desantis-blames-media-for-hysteria-over-covid-surge-1389404 ............................................. 7

Inciting      Rhetoric      from      Democrats      (August      16,      2021) https://www.youtube.com/watch?v=gcVlsq2x79g. ...................................................... 8

Kalhan Rosenblatt, *Protestors pound the doors of the Supreme Court following Kavanaugh   confirmation*,   NBC   NEWS   (Oct.   6,   2018), https://www.nbcnews.com/politics/supreme-court/protests-build-capitol-hill-ahead-brett-kavanaugh-vote-n917351 ................................................................................. 12

Miller Center, University of Virginia, Andrew Johnson: Message Proposing Constitutional   Amendments   (July   18,   1868)   https://millercenter.org/the-presidency/presidential-speeches/july-18-1868-message-proposing-constitutional-amendments ............................................................................................................. 7

Patricia Zengerle, *Congress rejects Obama veto, Saudi September 11 bill becomes law*, REUTERS (Sept. 28, 2016), https://www.reuters.com/article/us-usa-sept11-saudi/congress-rejects-obama-veto-saudi-september-11-bill-becomes-law-idUSKCN11Y2D1 ...................................................................................................... 7

*Read the full transcript from the first presidential debate between Joe Biden and Donald   Trump*,   USA   TODAY   (Oct.   4,   2020,   7:44   PM)

https://www.usatoday.com/story/news/politics/elections/2020/09/30/presidential-debate-read-full-transcript-first-debate/3587462001/ ............................................. 11

*Remarks by the President on the Supreme Court Decision on U.S. Versus Texas* (June 23, 2016, 11:53 AM), https://obamawhitehouse.archives.gov/the-press-office/2016/06/23/remarks-president-supreme-court-decision-us-versus-texas ....... 7

ROBERT BOLT, A MAN FOR ALL SEASONS (1966) ........................................................... 14

*Schumer Threatens the Court,* WSJ (Mar. 4, 2020, 7:34 PM), https://www.wsj.com/articles/schumer-threatens-the-court-11583368462 ............ 13

Staff Of S. Comm. On Homeland Sec. & Gov't Affs., 117th Cong., Report On Examining The U.S. Capitol Attack: A Review Of The Security, Planning, And Response Failures On January 6 (Jun 7, 2021) ................................................ 24, 25

Susan Cornwell, *U.S. lawmaker spends night outside Capitol to protest return of evictions*, REUTERS (July 31, 2021, 5:58 PM), https://www.reuters.com/world/us/us-lawmaker-spends-night-outside-capitol-protest-return-evictions-2021-07-31/ ..... 12

United States Capitol Police, *USCP Fast Facts*, https://www.uscp.gov/media-center/uscp-fast-facts (last visited August 16, 2021) .............................................. 27

Yamiche Alcindor, *Attack Tests Movement Sanders Founded,* New York Times, (June 14, 2017), https://www.nytimes.com/2017/06/14/us/politics/bernie-sanders-supporters.html ........................................................................................................... 13

**Regulations**

11 C.F.R. § 100.29 ........................................................................................................... 6

## U.S. Constitution

U.S. Const. Art. II, § 2, cl. 2 ........................................................................... 19

U.S. Const. Art. II, § 3 ..................................................................................... 3

President Trump was carrying out the discretionary functions of his office and his constitutional mandate to take care the laws are faithfully executed. He was wielding the power of the bully pulpit, vested solely in the President of the United States to lobby for congressional action. Despite the obvious fact that President Trump was speaking on a political matter, firmly within his prerogative to address the nation and Congress on such matters, Plaintiff argues President Trump is entitled to neither absolute immunity nor First Amendment protections.

All of Plaintiff's allegations, by his own admission, relate to the public speech of the then-sitting President of the United States. Indeed, the First Amendment stands strong against those that would use the courts to punish Americans for speech, assembly, and the petition for redress of grievances. These important protections cannot easily be defeated by conclusory allegations of conspiracy, especially when the supposed conspiracy arises from nothing more than political activity.

This Court should not be fooled by the political and personal animosity of Plaintiff and his amici. The rule of law requires all people be treated equally in the eyes of the law. There can be no exception to these stalwart constitutional protections merely because Plaintiff does not want to extend these protections to his political nemesis. The Plaintiff's Complaint should be dismissed with prejudice.

1

I.      **The Constitution Forecloses Plaintiff's Claims.**

a.      **President Trump is Absolutely Immune.**

1.      *The Court should reject Plaintiff's invitation to make content-based value determinations on a Presidential address in making its "outer perimeter" determinations as to immunity.*

Plaintiff and his amici wish to constrict the absolute immunity of the presidency by allowing courts to make content-based value determinations on presidential activities and the motives behind them. That focus on the motive rather than the nature of the presidential act at issue has been squarely rejected by the Supreme Court. *Nixon v. Fitzgerald,* 457 U.S. 731, 756 (1982) ("[A]n inquiry into the President's motives could not be avoided under the kind of "functional" theory asserted both by respondent and the dissent. Inquiries of this kind could be highly intrusive.")

Plaintiff largely regurgitates many of the same arguments made by the *Nixon v. Fitzgerald* respondents, who claimed President Nixon lacked a legitimate presidential purpose for dismissing a federal employee in violation of federal law. *Id.,* 457 U.S. at 756-57. The Court rejected that argument, just as this Court should. Indeed, such a "construction would subject the President to trial on virtually every allegation that an action was unlawful or was taken for a forbidden purpose. Adoption of this construction thus would deprive absolute immunity of its intended effect." *Id.* at 757.

President Donald J. Trump ("President Trump") spoke on January 6 to address forthcoming congressional action. It is of no moment as to whether he was directly

involved in that action or whether Plaintiff, or even this Court, agreed with arguments made in that Presidential address. It is enough that the nature of the activity, a speech by the President, is the type of activity normal and customary to the presidency. Indeed, it was not at the outer perimeter of the President's duties; it was dead center.

### 2.    President Trump was exercising a specific constitutional duty to take care that the laws be faithfully executed.

A president need not point to a specific constitutional duty to show the activities at issue are absolutely immune from suit. Nevertheless, Plaintiff's allegations support the conclusion that President Trump was executing his duties under the Constitution to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. President Trump had an ever-present duty to ensure the election laws were followed, including the certification process. The Framers specifically sought to ensure it was the President's duty to *execute* the laws faithfully. Initially, the Framers directed the President to "carry into execution" the laws; however, at the Convention, the Framers replaced that language with giving the President an affirmative duty to take care that those laws be faithfully executed. Andrew M. Wright, *The Take Care Clause, Justice Department Independence, and White House Control*, 121 WVLR 353, 385 (2018). As one scholar wrote, "enforcing election laws … struck at the core of the executive branch's duty to faithfully execute the law." Alton L. Lightsey, *Constitutional Law: The Independent Counsel and the Supreme Court's Separation of Powers Jurisprudence*, 40 UFLLR 563, 573 (1988). Therefore, President

Trump's office included a duty to ensure compliance with election laws in this country.

As the Supreme Court held, the take care clause "are sweeping words." *Myers v. U.S.*, 272 U.S. 52, 122 (1926). It is the President's duty to make sure the laws are faithfully executed. *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010). Accordingly, President Trump had a broad range of authority in ensuring the laws are faithfully executed.

President Trump's efforts to question congressional action because of lapses in election integrity was a discretionary act, not subject to second-guesses from the judiciary. *See Halperin v. Kissinger*, 578 F. Supp. 231, 233 (D.D.C. 1984), *aff'd in part, remanded in part*, 807 F.2d 180 (D.C. Cir. 1986) ("Judicial inquiries, however, into possible motives for discretionary actions are 'highly intrusive[]' . . . and disruptive of effective government. If this were permitted, the doctrine of absolute immunity, which is based on the separation of powers, would lose its intended effect").

President Trump was speaking on a public issue in a public place on national television. The rally on January 6 and all other statements made by President Trump regarding the legality of changes to election laws and the validity of election results constitute speech on matters of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' . . . or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"). What falls within this

category for the President can be quite broad; in one instance, a district court held the "[t]elevised publication of the President's views on various topical items is within the outer perimeter of his official duties." *Lynch v. President of the U.S.*, 2009 WL 2949776, at * 1 (N.D. Tex. Sept. 14, 2009) (finding the President had immunity and dismissing Plaintiff's case).

### 3.  *President Trump's speech was in his official capacity.*

All the speech constituting Plaintiff's allegations were delivered in President Trump's official capacity as President. Plaintiff alleges President Trump participated in an unlawful conspiracy and, therefore, President Trump could not have been acting in his official capacity. Pl's. Resp. in Opp'n at 9 ("Pl's. Opp'n"). President Trump was not engaged in some elaborate conspiracy, and Plaintiff has failed to point to any plausibly pled facts to the contrary; instead, he was discussing matters of public concern. The sitting President of the United States is entitled to absolute immunity when speaking on matters of public concern, especially here when the speech in question took place *after* the election and was related to the integrity of the election.

Indeed, courts have previously found President Trump's speech on his Twitter account (@realDonaldTrump) is public speech in his official capacity. *See Knight First Amend. Inst. at Colum. Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019) (describing that because President Trump "repeatedly used [@realDonaldTrump] as an official vehicle for governance and made its interactive features accessible to the public without limitation," it "created a public forum"). Therefore, Plaintiff's allegations

which include President Trump's Twitter posts and publicly televised remarks, clearly include speech within the outer perimeter of the Presidential office.

Most notably, the speech came well after the election, not before. Thus, the speech at and leading up to the Ellipse rally—the basis of Plaintiff's claims—is speech President Trump made in his official capacity as the President of the United States. Indeed, the Federal Elections Commission (FEC) has laid out a detailed definition of electioneering. The FEC definition requires four things for a communication to be considered electioneering: (1) it must be a broadcast, cable, or satellite communication; (2) it must refer to a clearly identified candidate for federal office; (3) must be publicly distributed *prior* to an election; and (4) must be targeted to the relevant electorate. *See* 11 C.F.R. § 100.29. Accordingly, when President Trump made this speech, he was acting in his official capacity as the President of the United States and not engaged in electioneering.

Plaintiff argues there is no situation where a president may speak on something in his official capacity without an explicit constitutional duty involved. Aside from the obvious issue of the "take care" clause giving the executive broad authority to speak officially, Plaintiff's argument is incredible. Presidents past, present, and future will speak, and should speak, on numerous issues where they do not have any textually identifiable constitutional duty. For instance, Presidents have pushed against a veto override,[1] commented on expectations for Supreme Court

---

[1] *See, e.g.,* Patricia Zengerle, *Congress rejects Obama veto, Saudi September 11 bill becomes law*, Reuters (Sept. 28, 2016), https://www.reuters.com/article/us-usa-sept11-saudi/congress-rejects-obama-veto-saudi-september-11-bill-becomes-law-

opinions,[2] supported Constitutional amendments,[3] and spoken against State actions.[4] A President need not sift through the text of Article II as a precondition of using his bully pulpit to support or oppose issues of public concern. Any assertion to the contrary is an ill-considered and impractical limitation on presidential speech.

Accordingly, when President Trump made this speech, he was acting in his official capacity as the President of the United States and is thus protected by absolute immunity.

---

idUSKCN11Y2D1 (describing that President Obama called and wrote a letter to Senate Minority Leader Harry Reid to explain his opposition to the bill, and Reid was the only senator that sided against the veto override).

[2] *Remarks by the President on the Supreme Court Decision on U.S. Versus Texas* (June 23, 2016, 11:53 AM), https://obamawhitehouse.archives.gov/the-press-office/2016/06/23/remarks-president-supreme-court-decision-us-versus-texas (commenting that the even split of justices was a consequence of partisan reluctance to confirm a ninth justice and the President's policies "can't go forward at this stage, until there is a ninth justice on the Court to break the tie.").

[3] Andrew Johnson proposing constitutional amendment to remove electoral college (July 18, 1868: Message Proposing Constitutional Amendments (https://millercenter.org/the-presidency/presidential-speeches/july-18-1868-message-proposing-constitutional-amendments.)

[4] *See, e.g.,* Gary Fineout, *Biden tells DeSantis to 'get out of the way' amid Covid surge,* (Aug. 3, 2021, 6:03 PM), https://www.politico.com/states/florida/story/2021/08/03/desantis-blames-media-for-hysteria-over-covid-surge-1389404 (quoting President Biden, saying if the state governors are "not going to help, get out of the way of the people that are trying to do the right thing.").

**b. President Trump's and Donald Trump, Jr.'s political Speech was protected by the First Amendment.**

President Trump and Donald Trump, Jr.'s political speech must be considered in context. This is something that Democrats are often willing to allow when it comes to consideration of speech by a Democrat, but conveniently forgotten when it comes to the speech of Republicans. Indeed, for years it has been Democratic politicians, including several plaintiffs in one of the companion cases to this one, that have encouraged, supported, and provoked left-wing extremists and rioters, including avowed Marxists. The proof is in the pudding:[5]



Plaintiff's astounding hypocrisy also highlights his misunderstanding of the incitement doctrine. Liability for speech does not turn on whether violence was successfully incited; it depends upon whether the speech was directed to incite and

---

[5] See entire video at: https://www.youtube.com/watch?v=gcVlsq2x79g.

created a likelihood of imminent lawless action. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). President Trump did nothing of the sort when commenting that supporters could peacefully and patriotically make their voices heard. Nothing that Plaintiff has or could plead even approaches the *Brandenburg* test of imminence.

1.    *Plaintiff's incredible allegations of a conspiracy cannot preclude First Amendment protections.*

Plaintiff argues President Trump and Donald Trump, Jr. are not entitled to First Amendment protections because of the supposed conspiracy theory explained in his Complaint. Pl's. Opp'n at 17. Yet, the actions he alleges against President Trump and Donald Trump, Jr. universally are comprised of political speech, often made to political supporters. Political speech is never made in a vacuum; to be effective, it must be made while engaging with others. For the Court to find President Trump's and Donald Trump, Jr.'s speech here was unprotected under a theory of conspiracy liability, would be to create an exception that would swallow-whole the uniquely American protections for political discourse found in the First Amendment.

Plaintiff cites three Supreme Court cases in support of this notion, none of which actually stand for this principle. *Scales v United States*, 367 U.S. 203 (1961) (implying a ruling making merely associating with a group  known to engage in illegal advocacy, without a showing of specific intent to engage with them in that illegal advocacy through violence, is in violation of the First Amendment); *United States v. Alvarez*, 567 U.S. 709 (2012) (holding the First Amendment did not protect the defendant's   speech   because   the   Stolen   Valor   Act   clearly   defined   that

misrepresentations about receipt of military decorations or medals is a crime, and the defendant did exactly that, so there was no question that his speech was prohibited under a criminal statute); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) (holding that because it was established as a fact that the sole purpose of the speech was to harass and deter competitor's access to agencies and courts, in violation of antitrust laws, the speech is not protected). Plaintiff then cites to out of circuit cases regarding *criminal* conduct. Plaintiff confuses the issues by claiming their conclusory allegations of conspiracy can be used to strip President Trump's and Donald Trump, Jr.'s First Amendment rights.

### 2.    *Plaintiff takes President Trump's words out of context.*

Plaintiff's claim that President Trump spoke to the Proud Boys is an example of a misleading, and patently false, allegation. Compl. at ¶ 87. As Plaintiff paints the story, President Trump answered a question during a *nationally televised* presidential debate, directing the Proud Boys to "stand by." *Id.* The full context of the question and answer shows a different story.

> Chris Wallace: [A]re you willing tonight to condemn white supremacists and militia groups and to say that they need to stand down . . . [?]
>
> . . .
>
> President Trump: I'm willing to do anything. I want to see peace.
>
> Chris Wallace: Well, then do it, Sir.
>
> Vice President Biden: Say it. Do it. Say it.

10

President Trump: You want to call them . . . what do you want to call them? Give me a name, give me a name. Go ahead. Who would you like me to condemn?

Chris Wallace: White supremacist and right-wing militia.

Vice President Biden: The Proud Boys.

President Trump: Proud Boys, stand back and stand by. But I'll tell you what somebody's got to do something about Antifa . . . [6]

It was then-Vice President Biden who suggested President Trump address the Proud Boys, and the context for his off-the-cuff comment for whom they should stand by to deal with was not the federal government, but rather Antifa vigilantes and rioters.

Plaintiff even goes so far as to suggest a social media post from a supposed Proud Boy leader shows conspiracy simply by its public response to President Trump after the debate. The First Amendment is not so fragile as to be defeated by social media posts from debate viewers. Further, the different conspiracies Plaintiff alleges all relate to the results of the November 2020 elections, which had not taken place when this Presidential debate took place.

---

[6] *Read the full transcript from the first presidential debate between Joe Biden and Donald Trump*, USA TODAY (Oct. 4, 2020, 7:44 PM) https://www.usatoday.com/story/news/politics/elections/2020/09/30/presidential-debate-read-full-transcript-first-debate/3587462001/.

Given the numerous protests over the years on Capitol Hill[7] and the necessity of protecting political speech—the very type of speech the First Amendment was designed to protect—a holding that individuals can be liable for violence by random listeners if their words could be interpreted as a threat would nearly shut down Washington.

For example, Senate Majority Leader Schumer directed statements at Supreme Court Justices Gorsuch and Kavanaugh, saying "[y]ou have released the whirlwind, and you will pay the price" and "[y]ou won't know what hit you if you go

---

[7] *See* Kalhan Rosenblatt, *Protestors pound the doors of the Supreme Court following Kavanaugh confirmation*, NBC NEWS (Oct. 6, 2018), https://www.nbcnews.com/politics/supreme-court/protests-build-capitol-hill-ahead-brett-kavanaugh-vote-n917351 ("[P]rotestors pushed past a police line, storming up steps to pound on the doors of the U.S. Supreme Court on Saturday after the Senate confirmation of Brett Kavanaugh."); Cheyenne Haslett, *Dreamers protest on Capitol Hill on DACA deadline day*, ABC NEWS (Mar. 5, 2018), https://abcnews.go.com/Politics/dreamers-protest-capitol-hill-daca-deadline-day/story?id=53539262 (describing the DACA protests in which protestors arrived at the Capitol and Senate office buildings to demand Congress pass legislation to renew DACA protections and quoting a protestor who claimed her conduct was "fighting for the people whose DACA expires soon."); Susan Cornwell, *U.S. lawmaker spends night outside Capitol to protest return of evictions*, REUTERS (July 31, 2021, 5:58 PM), https://www.reuters.com/world/us/us-lawmaker-spends-night-outside-capitol-protest-return-evictions-2021-07-31/ (describing how "progressive lawmakers" sat outside the Capitol all night to emphasize demand to extend the moratorium on evictions); Annie Gowen, *Handful of protestors arrested during 'Occupy Congress'*, WA. POST (Jan. 17, 2012), https://www.washingtonpost.com/local/handful-of-protesters-arrested-during-occupy-congress/2012/01/17/gIQAjGgO6P_story.html (describing a particularly large protest by the "Occupy" movement that involved entering Congressional buildings to make demands).

forward with these awful decisions."[8] While his words were undoubtedly irresponsible, they were not actionable, and would not have been even if any actual harm befell the Justices from those who claimed they were inspired by Schumer's words. If every individual had to police her speech to ensure it could never be perceived as a threat in light of later events, nearly all political discussion would be off the table.

James Hodgkinson's June 2017 shooting of Rep. Steve Scalise, Capitol Police Officer Crystal Griner, and others is also illustrative. Hodgkinson was a supporter of Sen. Bernie Sanders. Shortly before the shooting, Sanders passionately addressed his supporters, saying that "today in the White House we have perhaps the worst and most dangerous President in the history of our country. And we also have, not to be forgotten, extreme right-wing leadership in the U.S. House and the U.S. Senate."[9]

---

[8] *Schumer Threatens the Court,* WSJ (Mar. 4, 2020, 7:34 PM), https://www.wsj.com/articles/schumer-threatens-the-court-11583368462.

[9] *See* video: https://youtu.be/7-nR_5UBIPU; Yamiche Alcindor, *Attack Tests Movement Sanders Founded,* New York Times, (June 14, 2017), https://www.nytimes.com/2017/06/14/us/politics/bernie-sanders-supporters.html.



Yet Rep. Steve Scalise, one of the victims of the shooting, did not attempt to cast aside the First Amendment to sue Sen. Sanders for his political rhetoric, almost certainly because Congressman Scalise understands that while he may have disagreed with Sen. Sanders' rhetoric, he was not willing to sacrifice the ancient protections of the First Amendment to hold the rival Senator accountable for that rhetoric. Perhaps Rep. Scalise even remembered Sir Thomas Moore's celebrated lines from A Man for All Seasons: "[t]his country is planted thick with laws, from coast to coast, Man's laws, not God's! And if you cut them down. . . do you really think you could stand upright in the winds that would blow then?"[10]

3.    *Plaintiff mistakenly relies upon the effect upon the listeners.*

Plaintiff's insistence that the way *others* interpret one's speech is somehow enough to establish a conspiracy or incitement goes against well-established First

---

[10] ROBERT BOLT, A MAN FOR ALL SEASONS (1966).

Amendment law. *See Thomas v. Collins*, 323 U.S. 516, 535 (1945) (rejecting liability based on how others interpret one's speech because that "would 'pu[t] the speaker . . . wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning");
*Morse v. Frederick*, 551 U.S. 393, 442 (2007) (Stevens, J., dissenting) (describing liability based on others' understanding would blur "the distinction between advocacy and incitement"). In any event, quoting President Trump's or Donald Trump, Jr's language and leaving out key phrases indicating a desire for peaceful protest does not amount to factual support for an allegation of conspiracy or incitement. Plaintiff has cherry-picked his allegations from thousands of tweets, speeches, rallies, and public statements in order to create an out-of-context narrative. Taken in context, with the totality of only President Trump's and Donald Trump, Jr.'s actual language considered, Plaintiff cannot plausibly state a claim.

Plaintiff cannot, in fact, plausibly allege President Trump or Donald Trump, Jr. expected, desired, or incited violence. The bulk of his allegations consist of general statements, interpreted by others to be calls to violence. This effect on others is not relevant under the First Amendment. Rather, it is President Trump's and Donald Trump, Jr.'s actual words. His words included passionate flourish and calls for peaceful, patriotic protest. Taken overall, and importantly, in context, Plaintiff cannot plausibly allege President Trump or Donald Trump, Jr. sought to incite violence.

## II.    Plaintiff Lacks Standing.

Standing is a key determination that must be made before this Court has the authority to proceed to consideration on the merits. Whether the Plaintiff has the right to sue in this instance is a threshold issue to determine this Court's authority to hear the merits of this case that must be determined by this motion to dismiss.

### a.    Whether Plaintiff's claims are covered by the terms of the statute is a threshold matter properly considered in this Motion to Dismiss.

Plaintiff is bound by the allegations of his Complaint. The alleged facts in that Complaint show he lacks standing to bring this action. Indeed, whether the lack of standing is based on constitutional or statutory grounds, the end result is dismissal of the case.

The standing requirements for a 42 U.S.C. § 1985 claim requires at a minimum two findings: (1)  Plaintiff was harmed and (2)  harm was caused by either a conspiracy to prevent any person by force, intimidation, or threat from holding any office, trust, or place of confidence under the United States, or from executing the duties thereof; or a conspiracy to force, intimidate, or threaten an officer of the United States to leave any state, district, or place where his duties are required to be performed.

When discussing their statutory standing, Plaintiff describes an elaborate conspiracy plan. Regardless of how the alleged conspiracy is framed, none of the formulations create a cause of action under the terms of § 1985 because Plaintiff is not a federal officer. Even if he was a federal officer, Plaintiff has not sufficiently

alleged factual support for a conspiracy to prevent the certification of the election, let alone a conspiracy to use violence to achieve that alleged goal.

### b. Plaintiff is not covered by § 1985(1) because under controlling Supreme Court precedent, that statute only grants a cause of action based on injuries to federal officers.

Plaintiff cites a single case in support of their argument that Congressional members are either federal officers or hold an office, trust, or place of confidence under the United States. *See* Pl's. Opp'n at 21 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971)). That case solely stands for the proposition that reconstruction statues should be accorded a broad sweep.

Plaintiff has broadly alleged he is both the harmed party and such person holding an office, trust, or place of confidence under the United States or federal officer. Plaintiff has not, however, plausibly alleged he is an officer of the United States as required by 42 U.S.C. § 1985. In *Griffin*, the Supreme Court held Reconstruction Era statutes such as § 1985 should be accorded a sweep as broad as their language. *Griffin, 403 U.S.* at 97.

While it is generally true that remedial statutes are construed broadly, Plaintiff left out that the Court made this particular statement in the context of § 1985(3) to address whether the prohibition of conspiracies to deny equal protection applied to the actions of private individuals or solely the state. *Id.* at 97–98. The Court ultimately held § 1985(3) should be read broadly enough to encompass the actions of private individuals, not just actions from the state in their official capacity, and this intent is evidenced from the inclusion of legislative history indicating the act was

17

meant to cover conspiracies by private individuals. *Id.* at 98, 101. Because § 1985(1) and § 1985(3) confer standing in different ways (and involve pleading different elements), it is misleading to use *Griffin*, a case specifically only involving the construction of § 1985(3) to argue Plaintiff has standing under § 1985(1), which requires a particular type of threat against enumerated parties. Reading § 1985(3) to cover deprivations of equal protection by private individuals is not the same as reading § 1985(1) to include conspiracies against a member of Congress who is, under binding Supreme Court precedent, not considered a federal officer.

The Supreme Court has laid out five specific conspiracies § 1985 proscribes, which are those interfering with

> (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections.

*Kush v. Rutledge*, 460 U.S. 719, 724 (1983). The Court further explained, as currently codified, § 1985(1) applied to (a), § 1985(2) applied to (b) and (c), and § 1985(3) applied to (d) and (e). *Id.* With this binding Supreme Court precedent, it is understandable that many courts, including the Third Circuit, merge the phrase "office, trust, or place of confidence under the United States" in § 1985(1) to mean the person interfered with must be a federal officer. *Miller v. Indiana Hosp.*, 562 F. Supp. 1259, 1281 (3d Cir. 1983). The Third Circuit went as far as to say "subsection [§ 1985(1)] only protects federal officers." *Id.* The Ninth Circuit also held § 1985(1) applies exclusively

18

to federal officers. *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717-18 (9th Cir. 1981).

Other district courts have also come to the same conclusion. The District of New Jersey found that to bring a claim under § 1985(1) a plaintiff must show they are a federal officer. *Lobosco v. Falsetti*, No. 09–01455, 2010 WL 4366209, at * 3 (D.N.J. Oct. 28, 2010). In *Lobosco*, the court dismissed the plaintiff's claims under § 1985(1) as a matter of law because the plaintiff failed to plead sufficient facts to show he was a federal officer. *Id. See also Diulus v. Churchill Valley Country Club*, 601 F. Supp 677, 681 (W.D. Pa. 1985) (dismissing a § 1985(1) claim because the complaint did not indicate any action of a federal officer).

According to the foregoing precedent from the Supreme Court, circuit courts, and district courts, the phrase, "office, trust, or place of confidence under the United States" in § 1985(1), is all merged to mean federal officer. The scope of an officer of the United States is very clear. "Unless a person in the service of the government...holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not...an officer of the United States." *United States v. Mouat*, 124 U.S. 303, 307 (1888). Additionally, the Supreme Court explained in 2010, "[t]he people do not vote for the 'Officers of the United States.' Art. II, § 2, cl. 2. They instead look to the President to guide the 'assistants or deputies . . . subject to his superintendence.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 497-98 (2010). Accordingly, a Member of Congress is not a federal officer, nor

would he hold an office, trust, or place of confidence under the United States for purposes of 42 U.S.C. § 1985(1).

Plaintiff's claims do not fall within § 1985(1) it is also clear his claims do not fall within either of the other two sections in § 1985, as § 1985(2) deals with the obstruction of the justice and § 1985(3) deals with depriving individuals of equal protection of the laws. Notably, Plaintiff disregards the Supreme Court's interpretation of § 1985(1), which comes to the opposite conclusion as Plaintiff's pieced-together faulty interpretation.

Plaintiff cites three additional cases illustrating, in his opinion, why they have standing under §1985(1). First, in *Lewis*, the Western District of Missouri held a state court judge had standing under §1985(1). *Lewis v. News-Press & Gazette Co.*, 782 F. Supp. 1338, 1341-42 (W.D. Mo. 1992). Second, in *Stern*, the Seventh Circuit held an IRS agent had standing under §1985(1). *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1337 (7th Cir. 1977). Third, in *Windsor*, the Sixth Circuit held a United States Attorney had standing under §1985(1). *Windsor v. The Tennessean,* 719 F.2d 155, 161 (6th Cir. 1983). Not surprisingly, Plaintiff failed to cite a single case where a member of Congress had standing under §1985(1). This is because members of Congress do not have standing under §1985(1).

### c.   Plaintiff failed to allege a concrete harm sufficient to invoke Article III standing.

Plaintiff has failed to allege any concrete harm recognized under D.C. Circuit law giving him any standing against President Trump. *See Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Plaintiff was not emotionally harmed as the law defines it; Plaintiff was not physically harmed; and, even though Plaintiff does not fall within the statute in the first place, Plaintiff was not actually prevented from performing any of his duties because, as we all know, Congress successfully verified Joseph Biden as the next President of the United States. Accordingly, Plaintiff's suit must be dismissed for lack of standing for failing to allege a particularized and concrete injury.

## III.   Plaintiff Has Failed to State a Claim Upon Which Relief May be Granted.

As outlined above, Plaintiff is not a Federal Officer; and, therefore, does not fall within the purview of 42 U.S.C. § 1985(1). Therefore, in addition to not having standing, Plaintiff has failed to state a claim upon which relief may be granted as to that claim.[11]

### a.  Plaintiff does not adequately allege all elements for a conspiracy claim as there are not enough factually supported claims for the court to plausibly find President Trump had intent or knowledge.

Plaintiff characterizes President Trump's organizing of a "wild" protest at the Ellipse where he encouraged citizens to assemble and petition the government—two of the most central elements of our First Amendment protected freedoms—as conspiring to help the violent protestors at the Capitol by sending "an angry mob" to

---

[11] Since a 42 U.S.C. § 1986 claim is derivative of a §1985 claim, Mr. Swalwell's lack of standing and failure to state a claim applies to both statutes.

their location. Pl's. Opp'n at 39-40. He also alleges President Trump spoke to the Proud Boys and asked them to "stand by," yet at no point do they allege a factual basis for concluding there was direct communication between President Trump and the Proud Boys or others who may have orchestrated the violence on January 6. Plaintiff describes it is possible to infer conspiratorial agreement from an indirect evidence of assistance, but the language they cite was the D.C. Circuit chastising courts for blurring the standards between aiding and abetting and conspiracy. Pl's. Opp'n at 39 (citing *Halberstam v. Welsh*, 705 F.2d 472, 478 (D.C. Cir. 1983) ("Courts and commentators have frequently blurred the distinctions … rel[ying] on evidence of assistance … then attached the label 'civil conspiracy' to the resulting amalgam")).

Indeed, Plaintiff also quotes *Halberstam v. Welch* to support their claim by arguing a shared goal is enough. Pl's. Opp'n at 39-40. In support, Plaintiff reiterates his naked assertions that the conspiracy spanned months (of only public speeches as the contact), including tweets that a rally would be "wild" (as if this means violent); that President Trump was speaking directly to the Proud Boys when on a nationally televised debate stage; that President Trump "encouraged violence" (without a single citation as to how other than an improper post hoc ergo propter hoc argument regarding timing). *Id.*

Plaintiff uses this cite to score points on his opposition; that because he alleges President Trump assisted the main tortfeasors, there was a conspiracy. Plaintiff misreads the context in which the D.C. Circuit gave this quote. Indeed, the D.C. Circuit disagreed with other courts for conflating "aiding and abetting" with civil

conspiracy. "The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct…" *Id.* Accordingly, just because Plaintiff believes President Trump assisted the main tortfeasors does not prove a conspiracy claim.

Therefore, Plaintiff's arguments boil down to alleging a similar goal (and fail even to do that without conclusory allegations as President Trump's end goal was legitimate) which is an insufficient basis for alleging a conspiracy.

Plaintiff attempts to portray this case as an easy case to prove conspiracy; however, the D.C. Circuit has held that:

> The easiest situation in which to draw an inference of agreement is where the parties are on the scene together at the same time performing acts in support of one another. . . . The performance of different *acts* at different *times* in different *places* . . . requires a more extensive set of inferences to link the actors together.

*Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).  As Plaintiff himself said, President Trump's statements occurred over months. Pl's. Opp'n at 39. These statements were not made to any specific groups or individuals; instead, they were said over media reaching anyone within earshot. The only time President Trump was at the same place with the alleged main tortfeasors was on January 6 and at no point did he encourage any violence. Plaintiff's case does not meet the more extensive set of inferences required to show a conspiracy.

To adequately allege there is a conspiracy to engage in illegal activity, it is insufficient to allege the defendant shares the *legal* end-goal with the individuals who engaged in unlawful activities. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (explaining that even in the antitrust context where there is strict liability for the illegal end-goal, a "conspiracy must include evidence tending to exclude the possibility of independent [legal] action")

The findings in the Homeland Security and Government Affairs ("HSGA") staff report investigating the events of January 6 show even the FBI and Department of Homeland Security did not find the websites and alleged threats referenced by Plaintiff to be credible. HSGA Staff Report at 5.[12]

If offices dedicated to assessing threats to the homeland and keeping the President aware of those threats did not find the postings credible, Plaintiff's allegation that President Trump and his aides were monitoring those postings are beyond incredible. Importantly, it would set an impossible burden on future defendants who face allegations of conspiracy if the court holds negative findings by an intelligence agency tasked with tracking the possibility of domestic terrorism threats is insufficient to refute knowledge of a conspiracy. Further, Plaintiff has the burden to affirmatively allege knowledge and the existence of the HSGA report shows this allegation is not credible. The HSGA report goes even further to show President

---

[12] Staff of S. Comm. on Homeland Sec. & Gov't Affs.,117th Cong. Rep. on Examining The U.S. Capitol Attack: A Review of the Security, Planning, and Response Failures on January 6 ("HSGA Report").

Trump was concerned about the security of the January 6 meeting. HSGA Report at 77 (describing President Trump made a point to ask the Acting Secretary of Defense, in a meeting on an unrelated issue, "whether they were prepared" and the President "concurred in the activation of DCNG to support law enforcement"). This interaction, contained in an official report written after President Trump left office, severely cuts against Plaintiff's baseless notions of conspiracy.

Finally, Plaintiff's alleged communications are based entirely upon public speech aimed at millions of Americans, some during an election cycle, and the rest on political issues within the President's purview to comment on topical issues. Therefore, Plaintiffs have failed to state a claim under 42 U.S.C. §§ 1985 and 1986 against President Trump or Donald Trump, Jr.

## IV.     Likewise, Plaintiff's D.C. and common law claims also fail.

### a.     Aiding and Abetting

Plaintiff's claim for aiding and abetting common law assault fails. Plaintiff uses a criminal law statute to show incitement is included in the definition of aiding and abetting. Incitement, however, does not fall within the civil definition for aiding and abetting a common-law tort. The *Halberstam* court predicted this Circuit would create a tort for aiding and abetting, in doing so, they created three elements: (1) the defendant aided the assault; (2) the defendant was generally aware of its role in the tortious activity; and (3) the defendant knowingly and substantially assisted in the assault. *Halberstam,* 705 F.2d at 477. Since the *Halberstam* opinion, however, this Circuit has not recognized a tort of aiding and abetting. In fact, this Court held "the

tort of aiding and abetting is not recognized under District law." *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 119 (D.D.C. 2012). In 2007, the D.C. Circuit held that "[a]lthough the Halberstam court predicted that this court would recognize a tort of aiding and abetting tortious conduct, we have not done so to date, and we are not bound by that court's ruling." *Flax v. Schertler*, 935 A.2d 1091, 1108 n. 15 (D.C. Cir. 2007). Accordingly, in *3M Co.*, this Court held the D.C. Circuit's actual ruling controls and not their prediction; and, therefore, there is no tort of aiding and abetting. *3M Co.*, 842 F. Supp. 2d at 119. Therefore, Plaintiff's claim for aiding and abetting must be dismissed because it is not recognized in this Circuit. Even if the tort was recognized, President Trump and Donald Trump Jr. did not provide *substantial* assistance to the alleged main tortfeasors.

### b.    Negligence

Plaintiff argues President Trump was negligent because he breached his duty to Plaintiff. In coming to this conclusion, Plaintiff argues President Trump had a duty to Plaintiff because there was a reasonably foreseeable risk to him, and President Trump's political hyperbole breached this duty. Pl's. Opp'n at 44-45.

Plaintiff is correct that duty can be a matter of foreseeability, but the standard depends upon the unique facts of the case. When there is intervening criminal conduct between a defendant's actions and the action harming a plaintiff, a defendant only owes a plaintiff a duty on a *heightened* foreseeability scale. *Board of Trustees of U. of Dist. of Columbia v. DiSalvo*, 974 A.2d 868, 871 (D.C. Cir. 2009). Under this heightened standard, a "plaintiff bears the burden of establishing that the criminal

act was so foreseeable that a duty arises to guard against it." *McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708, 717 (D.C. Cir. 1991). Breaching a building paying $460 million a year in security[13] was not *so* foreseeable as to give President Trump a duty to guard against the conduct. *Id.* Accordingly, President Trump did not owe any duty to Plaintiff.

Even if President Trump or Donald Trump Jr. did owe Plaintiff a duty, they did not breach that duty or cause any of Plaintiff's harm. As previously discussed, President Trump called for peaceful and patriotic demonstrations. Should his statements be held negligent, then district courts' dockets will be cluttered with lawsuits challenging similar statements from many politicians. Aside from the obvious First Amendment pitfalls, such a rule would put the judiciary in an untenable position.

### c. Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIED)

Plaintiff seeks to hold President Trump liable for emotional distress damages, the only damages he alleges. Even if Plaintiff could proceed based on damages, IIED is a high burden to meet; mere feelings of being embarrassed, threatened, or demeaned are insufficient. *Davis v. Megabus Northeast LLC*, 301 F. Supp. 3d 105, 114 (D.D.C. 2018). In doing so, Plaintiff claims both intentional infliction of emotional

---

[13] United States Capitol Police, *USCP Fast Facts*, https://www.uscp.gov/media-center/uscp-fast-facts (last visited August 16, 2021).

distress and negligent infliction of emotional distress. President Trump and Donald Trump Jr. are liable for neither set of alleged damages.

"Courts set a high bar to recover under an IIED claim." *Id.* Even when a situation is "abhorrent," as was the case in *Davis*, severe emotional distress is a high bar. *Id.* at 113-14 (quoting *Crowley v. N. Am. Telecommunications Ass'n,* 691 A.2d 1169, 1172 (D.C. Cir. 1997)). A plaintiff's claim fails if it fails to allege more than mental or emotional distress. *Id.* at 114. Although this need not be physical manifestations, past cases have required a showing of a worsening mental condition and doctor's visits. *See Harris v. U.S. Dept. of Veterans Affairs*, 776 F.3d 907 (D.C. Cir. 2015) (finding severe emotional distress where the plaintiff had multiple hospital visits and worsening PTSD because of the distress). Plaintiff does not allege he suffered emotional damages beyond January 6, 2021. Accordingly, Plaintiff has failed to allege any sort of damages recognizable for emotional distress.

Additionally, President Trump and Donald trump, Jr. are not liable for any alleged negligently imposed emotional damages. The D.C. Circuit has abandoned the physical impact requirement of an NIED claim and, instead, requires a plaintiff to prove their emotional distress was serious and verifiable. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796-97 (D.C. Cir. 2011). To be considered serious and verifiable, "the distress must have manifested in an external condition or physical symptoms." *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) (citing *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. Cir. 1991)). Nowhere in Plaintiff's Complaint does he alleged his emotional distress developed into an

external condition or physical symptoms. Accordingly, Plaintiff has failed to amply plead damages regarding any of President Trump's or Donald Trump, Jr.'s alleged negligence.

### d.    Civil Action for Bias Crimes Under D.C. Code § 22-3704

Plaintiff's claims of prejudice under D.C. Code § 22-3704 must fail due to the fact that all of Plaintiff's other claims fail. In Plaintiff's opposition, he cites all of the other torts he has accused President Trump of committing and said because he committed these torts with prejudice, President Trump is liable under § 22-3704. Pl's. Opp'n at 45. As discussed above, President Trump cannot be held liable for any of the torts of which Plaintiff accuses him. Accordingly, because President Trump and Donald Trump, Jr. are not liable for any tort, they could not have committed a tort with prejudice. Even still, calling someone a radical left Democrat does not amount to prejudice.

## CONCLUSION

For the foregoing reasons, President Trump and Donald J. Trump, Jr.'s Motion to Dismiss should be granted. This matter should be dismissed with prejudice.

Dated: August 16, 2021                        Respectfully submitted,

                                              /s/ Jesse R. Binnall
                                              Jesse R. Binnall (VA022)
                                              BINNALL LAW GROUP, PLLC
                                              717 King Street, Suite 200
                                              Alexandria, VA 22314

Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump
and Donald Trump, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on August 16, 2021, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.


Dated: August 16, 2021                                    /s/ Jesse R. Binnall
                                                          Jesse R. Binnall
                                                          *Attorney for Donald J. Trump*
                                                          *and Donald Trump, Jr.*

31