**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   Case No. 21-cv-00400 (APM) |
| | ) |
| DONALD J. TRUMP, et al., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

**I.**

Defendant Donald J. Trump asks the court to stay these consolidated civil cases pending resolution of his criminal case brought by the Special Counsel in *United States v. Trump*, No. 23-cr-00257 (TSC) (D.D.C.). *See* Def. Trump's Mot. for Stay, ECF No. 90 [hereinafter Def. Trump's Mot.], Stmt. of P&A in Supp. of Def. Trump's Mot., ECF No. 90-1 [hereinafter Def. Trump's Mem.]. Defendant Enrique Tarrio asks to join the motion. Def. Tarrio's Mot. to Join, ECF No. 91. For the reasons explained below, their requests are denied.

**II.**

Courts in this District consider four factors when evaluating stay requests of this kind. The factors are: (1) the relationship between the civil and criminal actions; (2) the burden on the court; (3) the hardships or inequalities the parties would face if a stay were granted; and (4) the duration of the requested stay. *See, e.g.*, *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012); *Kurd v. Republic of Turkey*, No.18-cv-1117 (CKK), 2022 WL 17961245, at \*2 (D.D.C. Dec. 27, 2022). These factors are meant to serve as a "rough guide" for a court's exercise of discretion,

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2nd Cir. 2012), "in [] light of the particular circumstances of the case," *SEC v. Dresser Industry, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

A party moving for a stay bears the burden to demonstrate that it is warranted. *See Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). That burden is even higher when, as here, the party seeks a stay of indefinite duration. Def. Trump's Mem. at 10; Reply in Supp. of Def.'s Mot., ECF No. 100 [hereinafter Def. Trump's Reply], at 10–11. Such a stay is proper only if the movant establishes a "pressing need." *Landis*, 299 U.S. at 255.

### III.

#### A.    Relationship Between the Civil and Criminal Matters

Defendant Trump asserts that the first "factor decisively counsels in favor of staying these proceedings," because "there is substantial overlap between [Plaintiffs' allegations] and the allegations in Special Counsel's D.C. [criminal] case." Def. Trump's Mem. at 4; *see Dresser*, 628 F.2d at 1375–76 (stating that the "strongest case" for deferring civil proceedings until after completion of criminal proceedings is when they "involv[e] the same matter"). That is true in a sense—both cases center on the former President's actions in the lead up to and on January 6, 2021. But Defendant overstates the significance of that factual overlap in the present posture of these matters.

The D.C. Circuit has identified three main dangers in allowing related civil and criminal cases to move forward that "involv[e] the same matter": (1) the defendant's Fifth Amendment right against self-incrimination might be "undermine[d]"; (2) the defendant's "defense to the prosecution" could be exposed; and (3) criminal discovery could expand beyond what is permitted

under Federal Rule of Criminal Procedure 16(b). *Dresser*, 628 F.2d at 1376. Each of these concerns is present here, but none is so acute as to justify an indefinite stay.

*First*, because the discovery authorized by the D.C. Circuit in this civil case does not require Defendant Trump to "engage with the merits of the plaintiffs' claims," his Fifth Amendment privilege is far less likely to be implicated. *See Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023). The sole purpose of discovery, at present, is to develop the record necessary to determine whether Defendant's alleged conduct "can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Id*. at 30. That inquiry "does not turn on whether the activity was subjectively undertaken in some measure to enhance the President's re-election prospects or profile. The inquiry instead is an objective one, 'grounded in' a context-specific assessment of 'the nature of the function performed.'" *Id*. at 20–21 (quoting *Clinton v. Jones*, 520 U.S. 681, 695 (1997)).

That assessment, for the most part, will not implicate Defendant's Fifth Amendment privilege. For instance, details regarding the funding, planning, and execution of the January 6 rally are all "objective indicia" that will not require any testimonial evidence from Defendant. *See id.* at 21, 30 (noting allegations "that the January 6 rally was organized in part by Trump's former campaign staff and arranged and funded by a small group including a top Trump campaign fundraiser and donor, or was organized and funded by Trump's campaign organization") (internal quotation marks and citation omitted). The same is true of other alleged conduct. Am. Compl., ECF No. 3, ¶¶ 39, 45, 49, 52 (allegations relating to phone calls and meetings with state and local election officials). Discovery on the question of immunity therefore generally will not require Defendant to admit to conduct alleged in the criminal case.

Plaintiffs also have made important concessions that further mitigate the risk of self-incrimination at this stage.  Plaintiffs represent that they "are not seeking to depose Defendant Trump or have him respond to interrogatories under oath in a manner that would bind him beyond this Court's immunity determination."  Pls.' Opp'n to Def.'s Mot., ECF No. 93 [hereinafter Pls.' Opp'n], at 16.  Thus, at this stage, Defendant will not be asked to make sworn statements that could be used against him at his criminal trial.

Of all the potential topics for discovery, Defendant offers only one that might implicate his Fifth Amendment privilege: his Twitter account.  Plaintiffs have asked him to stipulate that certain tweets were sent from his "personal Twitter account."  Def. Trump's Reply at 7–8; Ex. 1 to Jt. Status Report, ECF No. 87-1 (Plaintiffs' proposed stipulations of facts).  Defendant argues that, because he has taken the position in his criminal case that his tweets were official acts, the proposed stipulations "place[] [him] in a quandary," because they require him to either "accept proposed stipulations that are likely to negatively impact his criminal proceedings or contest them."  Def. Trump's Reply at 7–8.  But that is no "quandary," as he advances the same position in both cases: the tweets were official acts.

As to any particular tweet, the primary issue is whether objective, context-specific facts establish that the tweet was made within the outer perimeter of his official responsibilities.  *See Blassingame*, 87 F.4th at 20–21.  Say, for example, Defendant were to claim that the subject matter of a tweet is evidence that it was an official act.  *See id.* at 22 (stating that the contents of a speech "could serve to confirm what an objective assessment of the context makes evident").  Such a position would not compel him to admit that he wrote the tweet; rather, it would require him simply to identify the content as evidence of presidential conduct.  Nor would it require the court to make a finding that he in fact wrote or directed any particular tweet.  The court could *assume*

that Defendant did so and then consider the tweet's contents alongside other objective facts as part of the overall inquiry.  Defendant thus has not explained how any particular inquiry relevant to the immunity question would compromise his Fifth Amendment privilege.

*Second*, premature disclosure of the defense theory to prosecutors is unlikely to occur here due to the limited scope of discovery.  Defendant does not proffer any aspect of his criminal defense that would be revealed by identifying the objective, context-specific evidence that will inform the court's official-acts inquiry in this civil action.

*Third*, the court can and will impose safeguards to ensure that the immunity discovery in this case does not exceed what is ordinarily discoverable in a criminal case.  The D.C. Circuit has directed trial courts to consider "narrowly framed protective orders" as an alternative to indefinitely staying a civil case pending final resolution of a parallel criminal proceeding. *McSurely v. McClellan*, 426 F.2d 664, 672 (D.C. Cir. 1970) (stating that "an indefinite stay should not be entered unless no alternative is available"); *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970) ("[T]he fact that the civil case is not stayed does not mean that discovery must proceed in the same way as ordinary civil litigation.").  The tools at the court's disposal include limiting the form and sequence of discovery, sealing discovery responses, and conducting *in camera* review of privilege disputes.  *McSurely*, 426 F.2d at 672; *Gordon*, 427 F.2d at 580.  The court intends to use these tools to protect Defendant's Fifth Amendment privilege.

Accordingly, the first factor is, at best, neutral with respect to an indefinite stay.

### B.      Burden on the Court

Defendant Trump contends that a stay would alleviate the court of the burden of managing a "constant stream of privilege issues" and "significant disputes over constitutional claims."

5

Def. Trump's Mem. at 5 (internal quotation marks and citation omitted).  A stay until the criminal case is resolved, he says, "could" streamline immunity-related discovery.  *Id*. at 5–6.

But the court is prepared to accept whatever burdens that may arise.  That is the court's role.  Moreover, Defendant does not specify how resolving the criminal matter would make discovery on the presidential immunity issue more efficient.  The case on which he relies, *Estate of Gaither ex rel. Gaither v. District of Columbia*, Def. Trump's Mem. at 5–6, is different because the court there concluded that the civil litigation "might well prove wholly duplicative and unnecessary," because the criminal trial transcript would resolve many of the disputes and would preserve relevant testimony, "obviating . . . the central concerns of the plaintiff."  No. 03-cv-1458 (CKK) 2005 WL 3272130, at *4–6 (D.D.C. Dec. 5, 2005).  Defendant does not claim that the facts established in his criminal trial will render immunity discovery in this case "duplicative and unnecessary[.]"  *Id.*

The second factor does not favor an indefinite stay.

### C.    Balance of Interests

In their opposition, Plaintiffs assert that a stay would harm them in three ways: it would (1) delay the adjudication of their claims; (2) impact the availability and reliability of evidence; and (3) increase the risk that assets will be moved or depleted by Defendant and thus not be available to satisfy a potential judgment.  Pls.' Opp'n at 21–22.  The court is unmoved by the second and third of these interests.  The court has little concern about diminished memories, as many witnesses already have given testimony in other proceedings (like before the January 6 Commission), to which Plaintiffs likely have access.  Further, Plaintiffs offer only speculation that Defendant might seek to hide, move, or draw down assets.  *Cf. Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989) (affirming the district court's denial of a stay based,

6

in part, on the need to preserve potential assets where the defendant "continued to attempt to dispose of his assets"). The first interest, however, is a valid one: Plaintiffs have an "interest in the prompt resolution of [their] claims." *Louis Vuitton Malletier*, 676 F.3d at 104.

For his part, Defendant contends that avoiding a choice between waiving or asserting his right against self-incrimination is an interest that favors a stay. Def. Trump's Mem. at 6–7. But, as discussed, the limited nature of immunity discovery is less likely to put Defendant to that choice and, were he to face it, the court will have the necessary protections in place. Moreover, the two cases upon which Defendant relies are inapposite, as neither involved a request, as here, for an indefinite stay. *See* Def. Trump's Mem. at 6–7; *Sipper*, 869 F. Supp. 2d at 117–18 (a 90-day stay); *Kurd*, 2022 WL 17961245, at *2 (a stay of "just over one month").

Finally, "[t]he public has an interest in both the prompt resolution of civil cases as well as the fair prosecution of criminal cases." *Aviva Life & Annuity Co. v. Davis*, No. 12-cv-00603-JEG, 2014 WL 12366406, at *11 (S.D. Iowa July 29, 2014). The public interest here, therefore, will be served by moving forward, with the appropriate safeguards in place to preserve Defendant's Fifth Amendment privilege.

The third factor weighs against an indefinite stay.

### D.    Duration of Stay

Defendant contends that an indefinite stay is warranted because he is "the first former President" and "major party nominee in history to be criminally charged for conduct that occurred while in Presidential office." Def.'s Reply at 10. The Special Counsel's case, he says, constitutes an "extraordinary public moment." *Id.* In support of this proposition, President Trump relies on language from the Supreme Court's decision in *Clinton v. Jones*: "Especially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in

extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  520 U.S. at 707 (quoting *Landis*, 299 U.S. at 256).

Even accepting Defendant's prosecution as an "extraordinary public moment," the stay he requests is neither "not immoderate" nor "not oppressive."  To the contrary, it is "indefinite." Def. Trump's Mem. at 10.  Defendant does not even commit to moving forward with discovery if the jury were to return an unfavorable verdict.  *See United States v. Duchi*, 944 F.2d 391, 394 (8th Cir. 1991) ("The better rule . . . appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal.").  The court cannot stay this matter until Defendant no longer believes that immunity-related discovery will not incriminate him.

The final factor strongly favors denying the motion.

*      *      *

Having thus considered and balanced the four stay factors, the court denies Defendant Trump's request for an indefinite stay.

**IV.**

As an additional reason for a stay, Defendant Trump references his pending criminal immunity appeal before the Supreme Court.  *Trump v. United States*, 2024 WL 833184 (U.S. Feb. 28, 2024).  Defendant believes that a resolution of that issue may inform the scope of discovery, *see* Def. Trump's Mem. at 8, or may dispose of this case altogether, Def.'s Reply at 4.  But there is no reason to wait on the Supreme Court's decision.  This court is unlikely to make an immunity determination before the end of the Supreme Court's term.  Thus, if the Court's ruling on criminal immunity is relevant to the outcome here, it can easily be applied.

8

**V.**

For the foregoing reasons, Defendant Trump's motion for an indefinite stay, ECF No. 90, is denied.  Because Defendant Tarrio's request for a stay, ECF No. 91, is premised entirely on Defendant Trump's, his motion is denied as moot.

As a starting point for discovery, by May 1, 2024, Defendant Trump shall provide Plaintiffs with a detailed description of the basis for his immunity defense, with identities of witnesses and documents presently known to his counsel, and what limited discovery he will require.  This directive is without prejudice to future discovery requests by either side.

By April 26, 2024, the parties shall submit a proposed protective order that, at a minimum, ensures that any discovery responses from Defendant Trump shall remain under seal until further order of the court.  The parties shall also submit a Joint Status Report that proposes a schedule for completing discovery, including from third parties, relating to the immunity inquiry.

Dated: April 18, 2024

Amit P. Mehta
United States District Judge